NORTH CAROLINA LIFE AND ACCIDENT AND HEALTH INSURANCE
GUARANTY ASSOCIATION v. UNDERWRITERS NATIONAL ASSUR-
ANCE COMPANY, JOHN RANDOLPH INGRAM, COMMISSIONER OF
INSURANCE OF THE STATE OF NORTH CAROLINA AND HARLAN E.
BOYLES, TREASURER OF THE STATE OF NORTH CAROLINA

No. 7910SC766

(Filed 2 September 1980)

Insurance § 1; Judgments § 39— deposit made by defendant for N.C. policyholders —
title to deposit in Commissioner of Insurance — Indiana court judgment not res
judicata

Where defendant made a $100,000 deposit in N.C. for the protection of its
N.C. policyholders, the title and rights to the deposit were vested in the
Commissioner of Insurance, the Treasurer, and the State, and since defend-
ant did not hold title to the deposit, it was not an asset of the company
subject to an Indiana rehabilitation proceeding; therefore, because the Indi-
ana court lacked jurisdiction of the subject matter and *in personam* jurisdic-
tion over the Commissioner of Insurance or Treasurer, it could not deter-
mine the statutory rights of the N.C. policyholders in the deposit made by
defendant, and the Indiana court's decision was not entitled to full faith and
credit in N.C. and was not *res judicata.* G.S. 58-188.5 *et seq.*

APPEAL by defendant Underwriters National Assurance
Company from *Bailey, Judge.* Judgment entered 11 April 1979
in Superior Court, WAKE County. Heard in the Court of Appeals
29 February 1980.

On 12 January 1978 plaintiff (hereinafter Guaranty Asso-
ciation) filed a complaint against defendant, an insurance com-
pany domiciled in Indiana (hereinafter UNAC) seeking a judg-
ment declaring the Guaranty Association's right to have a de-
posit, made by UNAC, applied to meet UNAC's obligations to
North Carolina policyholders. The facts leading up to this com-
plaint are as follows: UNAC was qualified to do business and
was carrying on the business of selling accident and disability
insurance in North Carolina until 4 October 1974, when UNAC
voluntarily withdrew from doing business in North Carolina. In
June 1973 the North Carolina Insurance Commissioner in-
formed the President and Chairman of the Board of UNAC that
a $100,000 deposit for the protection of North Carolina policy-
holders would be required as a condition to allowing UNAC to
do business in North Carolina. UNAC made the required

$100,000 deposit on 27 September 1973, which was registered as follows: "Treasurer of the State of North Carolina in trust for the Underwriters National Assurance Company and the State of North Carolina as their respective interests may appear under Article 20, Chapter 58-188.5 of the North Carolina General Statutes." That deposit continues to be held by the North Carolina Insurance Commissioner.

In 1974 the Indiana Department of Insurance concluded that UNAC's reserves were inadequate to meet policy obligations and decided to take action in the Indiana Courts to petition for rehabilitation of UNAC on 5 August 1974.

The Rehabilitator undertook the administration and rehabilitation of UNAC under the supervision of the Superior Court of Marion County, Indiana. As the rehabilitation progressed, the North Carolina Commissioner advised the Guaranty Association of developments bearing upon its obligations to North Carolina policyholders.

On 10 December 1975, notices were mailed to all policyholders, including the policyholders then in North Carolina regarding conditional policyholder class representation or exclusion therefrom. This notice to policyholders provided in part: "Any person so requesting exclusion will not participate in any recovery of the intervening class, and will not be bound by the results of the litigation, insofar as his status as a member of such class is concerned. As a policyholder, however, he may be bound by a judgment effecting policyholders, if any is entered, including any reorganization plan approved by the Court in the rehabilitation proceeding."

On 27 May 1976 the Rehabilitator sent a formal notice to the state insurance guaranty associations and directed their attention to part X(C) of the proposed plan dated 23 April 1976. This notice was also sent to the North Carolina Insurance Commissioner. The last paragraph of part X(C) provided:

The guaranty associations in some states may have obligations to UNAC policy owners as a result of the UNAC rehabilitation proceeding. Moreover, to the extent such

guaranty associations do have obligations, there is a possibility that these guaranty association may seek to recover from UNAC sums paid to UNAC policy owners. The Rehabilitation Plan should resolve UNAC's contingent liability to any guaranty association by determining that UNAC has no further obligation or liability to any guaranty association.

On 8 June 1976 the Guaranty Association together with other state guaranty associations moved to intervene in the Indiana rehabilitation proceeding in "an effort not only to protect the rights of the Guaranty Associations, but also to accommodate the Petitioner (Rehabilitator) in his efforts to effectuate an orderly and equitable rehabilitation of the Respondent (UNAC)." The Guaranty Association was permitted to intervene in the rehabilitation proceeding and was represented by counsel at a hearing on 9 June 1976 concerning the proposed plan of rehabilitation. At the hearing the Guaranty Association objected to the provisions of the initial plan and made suggested changes. These suggested changes were agreed to by the Rehabilitator and were incorporated into a proposed plan tentatively approved by the rehabilitation court on 19 July 1976.

Subsequently, the intervening guaranty associations asked the rehabilitation court to approve a form letter to policyholders residing in North Carolina and seven other states and to approve in concept a service contract which would provide for UNAC to continue to administer the insurance policies on which each intervening guaranty association had obligations. The request of the intervening guaranty associations was granted by the rehabilitation court.

On 22 November 1976 the rehabilitation court entered an Order and Memorandum Approving the Plan of Rehabilitation in Settlement of Claims and Litigation. Part of the order provided in part:

In consideration of the provisions of the Rehabilitation Plan, the claims of the UNAC policy owner class representatives are compromised and dismissed . . . . Whether or

not any policy owner is a member of a class pursuant to Trial Rule 23, in order to fix and determine UNAC's obligations after rehabilitation, all claims of UNAC policy owners against UNAC are compromised and dismissed .... .

The order of rehabilitation allowed UNAC to increase the guaranty premiums on the noncancellable disability insurance policies. The order of rehabilitation also cancelled obligations owed by UNAC pursuant to the return of premium rider which provided that if no claim was made under the policyholder's basic insurance coverage for a period of ten years, most of the premiums paid during that 10 year period would be returned to the policyholder. The policyholders having return of premium riders were entitled to receive 15.68% of the additional amount paid for the return of premium rider prior to the insolvency date and were entitled to no return on the basic policy premium.

Paragraph 1 of the rehabilitation court's findings of fact in the order approving the final plan of rehabilitation provided: "The Court has jurisdiction over the subject matter and over the parties, including UNAC, ... all UNAC policy owners, ... State Insurance Guaranty Associations ..." In its order, the court stated:

To the extent that any claim, objection or proposal which was or could have been presented in this rehabilitation proceeding is inconsistent with the Plan, that claim, objection or proposal is overruled and relief to that extent denied. Without limiting the generality of the preceding sentence, all claims of litigation by any past or present UNAC policy owners, ... against UNAC or the Rehabilitator, except as provided in the Plan, are hereby compromised, settled and dismissed.

On 8 June 1977 the UNAC and the eight intervening guaranty associations filed a joint "Petition for Instructions Concerning a Service Contract Between Underwriters National Assurance Company and Each of the State Insurance Guaranty Associations." On 14 June 1977 the rehabilitation court gave its permission to do all acts reasonably necessary or appropriate to implement and carry out an approved Service

Contract. UNAC then sent the Guaranty Association the court-approved Service Contract. The Guaranty Association added the following language to the Service Contract without the approval of the rehabilitation court:

> It is expressly agreed, however, that the Guaranty Association and Underwriters explicitly reserve all their rights and remedies in connection with any deposits made by Underwriters with the Commissioner of Insurance of North Carolina, including deposits understood to total ... $100,000, which rights and remedies are governed by North Carolina law.

The Guaranty Association's president signed this altered document on 13 October 1977 and returned it to UNAC. Thereafter the President of UNAC returned the executed Service Contract accompanied by a letter of transmittal. In the letter the President indicated that he understood that the added paragraph was designed simply to recite that neither the Guaranty Association nor UNAC had waived any claims that it may have in connection with the North Carolina deposits. The President then indicated that UNAC took the position that Guaranty Association had no claims to the deposit, since the plan of rehabilitation had the effect of shutting off rights that North Carolina citizens and/or the Guaranty Association might otherwise have had to the deposits. After receiving this letter the Guaranty Association filed its complaint in North Carolina for declaratory judgment.

In its answer UNAC alleged that the Indiana Court's rehabilitation order should be given full faith and credit; that the security deposit at issue was an asset of UNAC and subject to the jurisdiction of the rehabilitation court; that the Guaranty Association acknowledged jurisdiction of the rehabilitation court by appearing in said rehabilitation proceedings; and that the rehabilitation order was *res judicata*.

On 13 July 1978 UNAC filed a Petition for Instructions with the Rehabilitation Court concerning the impact of the North Carolina action. After notice and hearing on this petition, an order was entered on 22 November 1978. The Indiana Court concluded:

The Court's final Order and the Plan fully adjudicated and determined that the North Carolina deposit was an asset of (and its use was to be determined by) the rehabilitated Underwriters, and any claim existing as of the date of adoption of the Plan against the deposit by the North Carolina Association or by any policy owner or creditor of Underwriters was compromised, settled and dismissed by the final Order and the Plan.

The Guaranty Association appealed this Order, and that appeal is still pending.

After the Indiana Court had acted, Guaranty Association, the North Carolina Insurance Commissioner and Treasurer joined in a motion for summary judgment. On 12 March 1979 UNAC also filed a motion for summary judgment. On 11 April 1979 the trial court entered summary judgment for the Guaranty Association.

*Allen, Steed and Allen, by William S. Patterson, Charles D. Case and Ann Hogue Pappas for the plaintiff.*

*Purrington, McNamara & Pipkin, by Ashmead P. Pipkin, for the defendant Underwriters National Assurance Company.*

MARTIN (Robert M.), Judge.

The question presented for review is whether plaintiff's motion for summary judgment was properly granted. This is a proper case for a declaratory judgment, G.S. 1-254, and the Guaranty Association is entitled to maintain the action. *Blades v. City of Raleigh,* 280 N.C. 531, 187 S.E. 2d 35 (1972). The propriety of a summary judgment in such action is governed by the same rules applicable to other actions, G.S. 1A-1, Rule 56(a) and (b) and 57. Here, there is no substantial controversy as to the facts disclosed by the evidence and the legal significance of those facts presents the questions in dispute. It was unnecessary for the Guaranty Association to show that it had suffered any loss or had any right impaired in order to maintain the action. Rather, the Association had to show that it would ultimately suffer a loss or have a right impaired. *Newman Machine*

*Co. Newman*, 2 N.C. App. 491, 163 S.E. 2d 279 (1968), *rev'd on other grounds*, 275 N.C. 189, 166 S.E. 2d 63 (1969).

The trial court entered an order which found "specified facts without substantial controversy," made conclusions of law and ordered that:

1. The UNAC policyholders residing in North Carolina on August 5, 1974, are entitled to have the deposit made by UNAC for the sole protection of North Carolina policyholders liquidated and to have the proceeds applied to meet the pre-rehabilitation obligations owed to them by UNAC to the extent those obligations were defaulted upon as a result of the insolvency of UNAC and the subsequent rehabilitation proceeding in Indiana.

2. To the extent that the proceeds of the deposit made by UNAC for the sole benefit of North Carolina policyholders fulfill the contractual obligations owed by UNAC to North Carolina policyholders, the Guaranty Association is not liable to North Carolina UNAC policyholders under the Guaranty Act.

3. UNAC has no interest in the deposit made by it in North Carolina for the sole benefit of North Carolina policyholders except in such sums as remain after the sale of the deposited securities and application of the proceeds for payment of all pre-insolvency obligations owed by UNAC to policyholders residing in North Carolina on August 5, 1974.

4. This Court shall retain jurisdiction in order to grant such further supplemental relief based on the declaratory judgment herein rendered, whenever necessary or proper, as by law is provided, and extending to all matters germane to the powers and duties of the Guaranty Association.

5. The Commissioner of Insurance shall promptly proceed to liquidate the deposit made by UNAC for the benefit of North Carolina policyholders and apply the proceeds to meet the pre-rehabilitation obligations owed by UNAC to North Carolina policyholders.

6. The counterclaim of UNAC against the Guaranty Association requesting damages incurred by reason of frivolous and improper acts of the Guaranty Association in commencing this action is hereby dismissed.

The crux of UNAC's argument is that any claim against it, or its assets, was compromised during rehabilitation in the Indiana Court and the judgment discharging the company's liability for all claims which the court did not allow is *res judicata* and entitled to full faith and credit as required by the United States Constitution. The authorities cited by UNAC support the proposition that pre-rehabilitation contractual rights that were modified pursuant to a plan of rehabilitation cannot be enforced by resorting to the general assets of the rehabilitated insurance company.

The Guaranty Association contends that the rights of North Carolina policyholders and, through subrogation, the Guaranty Association are not contractual rights and that their claims are statutory rights. They argue that these statutory rights are based upon the laws of North Carolina dealing with deposits made by non-domestic insurance companies for the protection of North Carolina policyholders.

The Guaranty Association is an organization created by statute to which all life, accident and health insurers doing business in North Carolina are required to belong. When an insurance company doing business in North Carolina becomes insolvent, it is the Guaranty Association's duty to see to it that all contractual obligations owed to North Carolina policyholders are fulfilled. Absent the availability of deposits or assets that can be used to meet the contractual obligations of the insolvent insurer, the Guaranty Association must assess its member companies and use those assessments to fulfill the contractual obligations of the insolvent insurer.

G.S. 58-155.66, in describing the purpose of the Guaranty Act, states: "To provide this protection, (i) an association of insurers is created to enable the guaranty of payment of benefits and of continuation of coverages . . . ." G.S. 58-155.68, in addressing the construction to be given the Guaranty Act, states: "This article shall be liberally construed to effect the purpose under G.S.

58-155.66 which shall constitute an aid and guide to interpretation." Section 58-155.72(9)(a) of the Guaranty Act specifically contemplates payments by the Guaranty Association for payments of contractual obligations or continuation of coverage and states that the Guaranty Association shall be subrogated to rights against the assets of any impaired insurer for such payments.

The Guaranty Association seeks a judgment declaring the Guaranty Association's right to have UNAC's deposit applied to meet UNAC's obligations to North Carolina policyholders and excluding UNAC from any interest in the deposit except as to any interest that might remain after the deposit is applied to payment of the contractual obligations of UNAC to residents of North Carolina.

G.S. 58-155.69(6) defines "impaired insurer" as:

an insurer which after the effective date of this Article, becomes insolvent and is placed under a final order of liquidation, rehabilitation, or conservation by a court of competent jurisdiction ...

Thus, despite the fact that UNAC has been rehabilitated, it is an impaired insurer and its defaulted obligations continue to exist for purposes of the Guaranty Act.

G.S. 58-155.78(c) provides that the Guaranty Association is deemed a creditor of the impaired insurer to the extent of assets of the impaired insurer attributable to covered policies, reduced by any amount to which the Guaranty Association is entitled by subrogation.

The Guaranty Association acknowledged its statutory liability to North Carolina UNAC's policyholders with regard to the increase in guaranteed premiums and the default on the return of premium riders allowed by the Rehabilitation Order.

It is undisputed that the deposit made by UNAC is located in North Carolina and is held in trust. It is the manifest intention of the North Carolina Legislature that the *title* and *rights* to securities deposited in accord with Article 20, Chapter 58-

188.5 *et seq.* are vested in the Commissioner of Insurance, the Treasurer and the State. *Continental Bank and Trust Co., v. Gold,* 140 F. Supp. 252 (E.D.N.C. 1956). The Indiana Court did not have the necessary personal jurisdiction over the Commissioner of Insurance and the Treasurer. Since UNAC did not hold title to the deposit, it was not an asset of the company subject to the Indiana rehabilitation proceeding. Thus, neither the trust property nor the Commissioner and Treasurer were subject to the judicial jurisdiction of the court in Indiana. Because the Indiana court lacked jurisdiction of the subject matter and in personam jurisdiction to determine the statutory rights of the North Carolina policyholders in the deposit made by UNAC, the Indiana Court's decision is not entitled to full faith and credit in North Carolina and is not protected by the doctrine of *res judicata.*

The Guaranty Association will ultimately be required to pay the policyholders pursuant to its statutory liability. Once paid, the Guaranty Association will become subrogated to any rights of these policyholders in the deposit under G.S. 58-155.72(9)(a). Consequently, it may assert those rights at this time in a declaratory action.

Having thus determined that the North Carolina policyholders are protected by the special deposit made by UNAC and also by the statutory liability of the Guaranty Association, we hold that it is proper that the deposit of the defaulting company should first be applied to the loss to the policyholders rather than the Guaranty Association whose members will ultimately be required to pay the remaining claims of the policyholders pursuant to their statutory liability.

In light of the Guaranty Association's assumption of liability with regard to UNAC defaults, it had clearly defined rights in the deposits made by UNAC by its statutory subrogation rights. G.S. 58-155.72(9). It seeks no more than it and the North Carolina policyholders are entitled to under the North Carolina Statutes. The court declared those rights and in its decision we find no error.

No error.

Judges CLARK and ERWIN concur.