ALMA CHRISTINE BOYLES v. PAUL W. BOYLES

No. 671A82

(Filed 31 May 1983)

**Constitutional Law § 26.1; Judgments § 51.1— foreign judgment concerning alimony arrearages—no adequate notice—no full faith and credit in North Carolina**

A default judgment rendered by a Florida court was void and subject to collateral attack because the defendant did not receive adequate notice in compliance with the Florida standard of reasonable notice. Defendant did not receive actual notice and there was no affirmative evidence that he had refused the notice. Being invalid under Florida law, the judgment was not entitled to full faith and credit in North Carolina.

Justice MARTIN dissenting.

Chief Justice BRANCH joins in this dissenting opinion.

ON 21 April 1971 in the Circuit Court of the Eleventh Judicial Circuit, DADE County, Florida, plaintiff was awarded a default judgment for alimony arrearages against defendant. On 30 April 1981, plaintiff filed a complaint in Superior Court, WAKE County, asking the North Carolina court to grant full faith and credit to the 21 April 1971 Florida court judgment. During the 14 September 1981 Civil Session of Superior Court, WAKE County, *Judge James H. Pou Bailey* ordered that full faith and credit be accorded the Florida judgment, and in so doing entered judgment against defendant for alimony arrearages of $10,800 plus interest. Defendant appealed to the Court of Appeals. In an opinion written by *Judge Becton*, and with which *Judge Hedrick* concurred, the Court of Appeals reversed the trial court's judgment and determined that full faith and credit should not be accorded the Florida judgment. *Boyles v. Boyles*, 59 N.C. App. 389, 297 S.E. 2d 405 (1982). *Judge Webb* dissented in the case; therefore, plaintiff appeals to this Court as a matter of right under N.C.G.S. § 7A-30(2) (1981).

*Douglas F. DeBank, Attorney for plaintiff-appellant.*

*Sanford, Adams, McCullough & Beard, by Charles H. Montgomery and Cynthia Wittmer West, Attorneys for defendant-appellee.*

FRYE, Justice.

The question with which we are presented is whether a North Carolina court is bound to accord full faith and credit to a default judgment for alimony arrearages rendered by a Florida court when the defendant in the action did not receive actual notice of the Florida court proceeding and the plaintiff's certified letter to the defendant notifying him of the action was returned to her marked "unclaimed." We hold that the Florida judgment cannot be accorded full faith and credit because it was not a valid judgment under Florida law: the notice given in the case was inadequate under Florida law. The factual circumstances and legal reasoning underlying this determination will be discussed below.

I.

Paul W. Boyles and Alma Christine Boyles were divorced on 19 October 1962 by the Circuit Court of the Eleventh Judicial Circuit, Dade County, Florida. The final decree of divorce required, among other things, that Paul Boyles pay Alma Boyles $200 a month in alimony so long as Alma Boyles remained unmarried.

About nine years later, in an action growing out of the divorce decree, Alma Boyles filed a motion in the Florida circuit court asking for a judgment against Paul Boyles for alimony arrearages. On 21 April 1971, the Florida circuit court awarded judgment to Alma Boyles for alimony arrearages of $10,800 after stating it had been "advised that notice was sent to the plaintiff, Paul W. Boyles, advising him of the Motion for Money Judgment and the date of said hearing, said notice being provided timely and in accordance with the laws of the State of Florida, and the plaintiff, Paul W. Boyles, failing to appear at said hearing. . . ." The only evidence in the record which relates to the Florida court's finding that notice of the alimony proceeding was in accordance with Florida law is: 1) a copy of a certified letter addressed to Paul Boyles at his Pennsylvania residence which bears a postal stamp indicating that the letter was returned to the writer, Alma Boyles' attorney, because the letter was "unclaimed," 2) notations on the certified letter indicating that two notices were left at Paul Boyles' address informing him that the post office had the letter, and 3) a copy of the unsigned receipt for the certified letter.

Over ten years after this Florida judgment for alimony arrearages had been entered, Alma Boyles filed a complaint in this State in Superior Court, Wake County, asking that full faith and credit be accorded the Florida default judgment. In an affidavit filed 16 September 1981, Paul Boyles, now a North Carolina resident, specifically denied he was ever "aware of any such action which allegedly resulted in a Florida judgment for $10,800.00 in April, 1971." He also specifically denied he had ever been served with a complaint for these alimony arrearages while living in Pennsylvania. Nevertheless, on 24 September 1981 the trial court entered an order according full faith and credit to the Florida default judgment. In so doing, it was ordered that defendant pay $10,800 in alimony arrearages together with interest thereon at the rate of eight percent from 21 April 1971. The Court of Appeals reversed this Superior Court judgment and held that full faith and credit should not be accorded the Florida default judgment because the notice of the proceeding was not sufficient under Florida law. *Boyles v. Boyles,* 59 N.C. App. 389, 395, 297 S.E. 2d 405, 409 (1982). We agree.

## II.

The Constitution of the United States provides: "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." U.S. Const. art. IV, § 1. In carrying out this constitutional mandate, the United States Supreme Court has consistently held that "the judgment of a state court should have the same credit, validity and effect, in every other court of the United States, which it had in the state where it was pronounced." *E.g., Underwriters Nat'l Assur. Co. v. North Carolina Life and Accident and Health Ins. Guar. Ass'n* [hereinafter cited as *Underwriters*], 455 U.S. 691, 704, 102 S.Ct. 1357, 1365, 71 L.Ed. 2d 558, 570 (1982), *quoting Hampton v. M'Connel,* 3 (Wheat.) 234, 235, 4 L.Ed. 378, 379 (1818). *See also* 28 U.S.C. § 1738 (1976) (acts, records and judicial proceedings of every other state "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the Court of such State, Territory or Possession from which they are taken").

Because a judgment from a rendering court is only entitled to the "*same* credit, validity and effect" in a sister state as it had

in the state where it was pronounced, the judgment from the rendering court must be deemed to have satisfied certain requisites of a valid judgment before full faith and credit will be granted. Restatement (Second) of Conflict of Laws § 92 and § 92 Comment c (1971). For example, the rendering court must have had subject matter jurisdiction — the power to pass on the merits of the case — before full faith and credit will be granted. *E.g., Underwriters*, 455 U.S. at 704, 102 S.Ct. at 1365, 71 L.Ed. 2d at 570; *Durfee v. Duke*, 375 U.S. 106, 110, 84 S.Ct. 242, 244, 11 L.Ed. 2d 186, 190 (1963); *Frances Hosiery Mills, Inc. v. Burlington Industries, Inc.*, 285 N.C. 344, 352, 204 S.E. 2d 834, 839 (1974). The rendering court must also have respected the demands of due process. That is, the rendering court must have had personal jurisdiction — otherwise known as "minimum contacts" — over the affected parties, *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and have afforded the parties adequate notice and an opportunity to be heard, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), before full faith and credit will be accorded the judgment. *See Griffin v. Griffin*, 327 U.S. 220, 228-29, 66 S.Ct. 556, 560, 90 L.Ed. 635, 640 (1946) (judgment obtained in violation of procedural due process is not entitled to full faith and credit). "A judgment rendered without judicial jurisdiction ['minimum contacts'] or without adequate notice or adequate opportunity to be heard will not be recognized or enforced in the other states." Restatement (Second) of Conflict of Laws § 104.

We note that the second court's scope of review concerning the rendering court's jurisdiction is very limited. In *Underwriters*, 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed. 2d 558 (1982), *rev'g* 48 N.C. App. 508, 269 S.E. 2d 688, *disc. rev. denied*, 301 N.C. 527, 273 S.E. 2d 453 (1980), the United States Supreme Court reiterated the rule that "a judgment is entitled to full faith and credit — even as to questions of jurisdiction — when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the judgment." *Id., quoting Durfee v. Duke*, 375 U.S. at 111, 84 S.Ct. at 245, 11 L.Ed. 2d at 191. It follows that the second court's limited inquiry into the rendering court's jurisdiction — simply whether the jurisdictional issue was "fully and fairly litigated" — rests on the presupposition that the requirement of ade-

quate notice had been met in the original proceeding. Indeed, if a litigant has no notice of a court proceeding, *a fortiori*, the litigant could not "fully and fairly litigate" *any* issue in the case. In recognizing this distinction between notice and jurisdiction, it follows that when a party against whom a default judgment was entered subsequently challenges the validity of the original proceeding on the grounds that he did not receive adequate notice, the reviewing court ordinarily must examine the underlying facts in the record to determine if they support the conclusion that the notice given of the original proceeding was adequate. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

In addition, full faith and credit requires that the rendering court must also have been competent. Restatement (Second) of Conflict of Laws § 105. *See also* R. Weintraub, *Commentary on the Conflict of Laws* § 4.3, at 96-97 (2d ed. 1980). That is, the rendering court must have been given the power by its state to entertain the particular action and there must have been compliance with the requirements the rendering state deems necessary for the exercise of judicial power. Restatement (Second) of Conflict of Laws § 105 Comment a. "A judgment rendered by a court lacking competence to render it and for that reason subject to collateral attack in the state of rendition will not be recognized or enforced in other states." *Id.* § 105. *See also* R. Weintraub, *Commentary on the Conflict of Laws* § 4.3, at 96-97. The reason for the rule is this: If a court lacks competence to render a particular judgment, the judgment is void in the state of rendition itself. Thus, the judgment will not be recognized or enforced by a sister state because under the Full Faith and Credit Clause a judgment can only be given the "same" effect, not a greater effect, in other states. Restatement (Second) of Conflict of Laws § 105 Comment a.

In the case at bar, defendant contends that the Florida default judgment is void and thus not entitled to full faith and credit because one of the requisites of a valid judgment—adequate notice—was not met before the Florida court entered judgment against him. Specifically, defendant contends that the Florida judgment is void for two reasons: 1) the Florida judgment was rendered in violation of defendant's fourteenth amendment right to due process under the United States Constitution which

requires adequate notice of a proceeding; and 2) the Florida court was not competent to render judgment because there was not compliance with the notice requirements the state of Florida has imposed in domestic cases like defendant's.

Defendant argues that his fourteenth amendment right to adequate notice was violated because the notice in the Florida proceeding did not meet the constitutional standard of reasonableness set out in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). That is, the notice was not "reasonably calculated, under all the circumstances," to apprise him of the pendency of the action and afford him an opportunity to present his objections. *Id.* at 314, 70 S.Ct. at 657, 94 L.Ed. at 873.

In addition, defendant contends that the Florida court was not competent to render judgment because there was not compliance with the reasonable notice requirement the Supreme Court of Florida set out in *Kosch v. Kosch*, 113 So. 2d 547 (Fla. 1959). In *Kosch*, the Florida Supreme Court held that proceedings supplemental to a divorce decree (*e.g.*, enforcement of alimony provisions of a divorce decree) "can be bottomed on a reasonable notice which affords an opportunity to be heard. This notice may be by mail and its sufficiency in each particular instance should be tested by its reasonableness and by the adequacy of the opportunity afforded the opposing party to be heard and to defend himself or herself. . . ."[1] *Id.* at 550. We will address first defendant's contention that the Florida court was not competent to

---

1. It may be argued that the reasonable notice standard under the fourteenth amendment Due Process Clause is the same as the Florida standard of reasonable notice under *Kosch v. Kosch*, 113 So. 2d 547 (Fla. 1959). *See Walsh v. Walsh*, 388 So. 2d 240, 241 n. 3 (Fla. Dist. Ct. App. 1980) ("[n]otice to the husband which satisfied due process considerations was sufficient" in a proceeding to enforce the child support provisions of a property settlement agreement incorporated in a divorce decree, *citing Kosch v. Kosch*, 113 So. 2d 547 (Fla. 1959)). *But see Maner v. Maner*, 412 F. 2d 449, 451-52 (5th Cir. 1969) (in citing *Kosch*, a federal appellate court upheld an arrearage judgment on the grounds that the notice given did not offend "Florida's doctrine of fair notice" and stated in a footnote that the "Florida standard for notice of proceedings to enforce alimony decrees does not offend the due process clause of the Fourteenth Amendment," thereby indicating the two standards are not necessarily the same). We need not go so far as to decide whether the Florida standard of reasonable notice is the same as the fourteenth amendment standard because we are only asked to determine whether under Florida case law interpreting the Florida standard the notice given in the case at bar was adequate.

render judgment because the Florida standard of reasonable notice had not been met in the original proceeding. In so doing, we will determine whether the certified letter sent to defendant at his Pennsylvania address but returned to plaintiff's attorney marked "unclaimed" satisfied the reasonable notice standard under Florida law, and thus rendered the Florida court competent to enter the default judgment against defendant.

## A.

As we noted above, "A judgment rendered by a court lacking competence to render it and for that reason subject to collateral attack in the state of rendition will not be recognized or enforced in other states." Restatement (Second) of Conflict of Laws § 105. Therefore, in determining whether to accord full faith and credit to the Florida judgment, we must first answer the following threshold issue: Is a Florida judgment void, and thus subject to collateral attack, if the Florida court renders judgment in a case in which the reasonable notice requirements under Florida law have not been satisfied?

In answering this question we note that "the statutes and decisions of the courts in the state in which the judgment was rendered are controlling." *Id.* § 105 Comment b. *See also Adam v. Saenger,* 303 U.S. 59, 63, 58 S.Ct. 454, 456, 82 L.Ed. 649, 652 (1938); *Am. Inst. of Mkt. Sys., Inc. v. Willard Realty Co.,* 277 N.C. 230, 233-34, 176 S.E. 2d 775, 777 (1970). We have examined the applicable Florida statutes and case law. It appears to us that, under Florida law, a default judgment rendered in violation of Florida's reasonable notice requirement is void and subject to collateral attack. Although we did not find any cases on point holding that a default judgment is void and subject to collateral attack if the reasonable notice requirement of *Kosch* has not been met, we did find that a Florida appellate court has held that a default judgment is void and subject to collateral attack when entered without "substantial compliance" with notice requirements as set out in Florida's substituted service of process statute, Fla. Stat. Ann. § 48.161 (West 1969 & Supp. 1983). *Parish Mortgage Corp. v. Davis,* 251 So. 2d 342 (Fla. Dist. Ct. App. 1971). We are aware that in defendant's case, a domestic case seeking enforcement of alimony provisions, plaintiff need not comply with the Florida substituted service of process statutes; the notice need only be "reasonable." *E.g., Kosch v. Kosch,* 113 So. 2d at

550. This determination rests on the supposition that the court already has jurisdiction over the defendant. *Id.*

We note that, generally speaking, service of process statutes are considered jurisdictional only because they mark the beginning of a court's assertion of jurisdiction over the defendant. 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1063, at 204; 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1353, at 580 (1969). The *primary purpose* of service of process statutes, aside from this jurisdictional ritual, is to provide mechanisms for bringing *notice* of the commencement of an action to the defendant's attention. *Id.* It follows, therefore, that if a failure to substantially comply with notice requirements under Florida's substituted service of process statute renders a default judgment void and subject to collateral attack, an analogous result should obtain where one has failed to comply with Florida's fair notice doctrine under *Kosch.* This determination is further supported by the fact that if there has been a failure to comply with the due process standard of adequate notice, a default judgment is always void and subject to collateral attack. *See Griffin v. Griffin,* 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946).

### B.

Having answered affirmatively the threshold issue of whether a Florida judgment is void and subject to collateral attack if rendered without compliance with Florida's fair notice doctrine under *Kosch,* we turn now to the question of whether the notice given of the Florida proceeding did in fact violate the *Kosch* standard. As noted before, the Supreme Court of Florida, relying on its precedents, held in *Kosch* that proceedings supplemental to a divorce decree (*e.g.,* enforcement of alimony provisions of a divorce decree) "can be bottomed on a reasonable notice which affords an opportunity to be heard. This notice may be by mail and its sufficiency in each particular instance should be tested by its reasonableness and by the adequacy of the opportunity afforded the opposing party to be heard and to defend himself or herself. . . ." *Kosch v. Kosch,* 113 So. 2d at 550. *See also Marshall v. Bacon,* 97 So. 2d 252 (Fla. 1957); *Watson v. Watson,* 88 So. 2d 133 (Fla. 1956); *Moore v. Lee,* 72 So. 2d 280 (Fla. 1954).

In examining the Florida courts' interpretations and applications of this rule, we have found that, without exception, notice

sent by mail is considered reasonable only if the affected party received actual notice or there was affirmative evidence that he or she had refused the notice. *Kosch v. Kosch,* 113 So. 2d 547 (Fla. 1959) (notice adequate where defendant and his attorneys were sent notice by mail; defendant filed a special appearance at proceeding); *Marshall v. Bacon,* 97 So. 2d 252 (Fla. 1957) (notice adequate where defendant found to have received actual notice by mail because he entered a special appearance through his counsel at proceeding); *Watson v. Watson,* 88 So. 2d 133 (Fla. 1956) (notice adequate where defendant received actual notice by mail); *Spencer v. Spencer,* 311 So. 2d 822 (Fla. Dist. Ct. App. 1975) (notice adequate where motion was mailed to defendant's attorneys and to defendant; defendant's copy of motion returned marked "refused" but signed by defendant); *Sikes v. Sikes,* 286 So. 2d 210 (Fla. Dist. Ct. App. 1973) (notice adequate where notice of proceeding given to defendant by mail; defendant was represented by her attorney at the proceeding); *Carter v. Carter,* 164 So. 2d 219 (Fla. Dist. Ct. App. 1964) (notice adequate where notice sent by mail to defendant and his attorneys; defendant's attorneys appeared at proceeding but maintained they were not present; first hearing was continued for convenience of defendant's attorneys; payment of arrearages was made within two weeks of the hearing through attorneys for defendant; defendant failed to deny receiving notice or that he lived at the address to which notice was sent). *See also Hartley v. Hartley,* 134 So. 2d 281 (Fla. Dist. Ct. App. 1961) (notice not adequate where it reached the affected party one day after the hearing because it had to be forwarded to the party from Florida to New York; neither the affected party nor her counsel appeared at the hearing).

We also examined analogous cases, decisions determining what is adequate notice under Florida's substituted service of process statutes. In so doing, we found that substituted service of process was effective, despite evidence in some cases that the affected party did not actually receive service, *only if* there was affirmative evidence that the affected party refused it or was concealing his or her whereabouts. *Cortez Dev. Co. v. New York Capital Group, Inc.,* 401 So. 2d 1163 (Fla. Dist. Ct. App. 1981) (certified letter sent to defendant but returned marked "refused" together with evidence that defendant lived at address to which letter was sent supported inference that return of the letter was

chargeable to defendant); *Fernandez v. Chamberlain,* 201 So. 2d 781 (Fla. Dist. Ct. App. 1967) (evidence that certified letter sent to defendant was returned marked "refused" but signed by defendant's father; defendant appeared specially to move to quash the service of process supported trial court's denial of defendant's motion to quash service); *Steedman v. Polero,* 181 So. 2d 202 (Fla. Dist. Ct. App. 1966) (substituted service effective when made on secretary of state where defendant failed to show that he was not concealing his whereabouts in light of plaintiff's evidence that he was, and defendant did not disclose where he could be found).

In the case at bar, the only evidence in the record which relates to the Florida court's finding that notice of the Florida alimony proceeding was in accordance with Florida law is: 1) a copy of a certified letter address to Paul Boyles at his Pennsylvania address which bears a postal stamp indicating that the letter was returned to the writer, Alma Boyles' attorney, because it was "unclaimed"; 2) notations on the letter indicating that two notices had been left at defendant's address; and 3) a copy of the unsigned receipt for the certified letter. This evidence, standing alone, does not support the conclusion that defendant received actual notice of the Florida proceeding. Moreover, all of the evidence indicates just the opposite—that defendant did not receive any notice. The certified letter was returned marked "unclaimed." Neither defendant nor his attorneys ever appeared at the Florida proceeding; the judgment was by default. Defendant vehemently denies in his affidavit that he ever received notice of the proceeding. Moreover, plaintiff did not present any evidence that defendant had actual notice of the proceeding or that he was concealing his whereabouts so as to avoid notice. Similarly, there is no direct evidence that defendant affirmatively refused the letter or even knew of its attempted delivery. Although the postal stamp on the certified mail form contained the word "Refused," the "Refused" block was not checked. Instead, a check mark was placed beside the word "Unclaimed." There is no signature or other notation on the envelope to indicate whether anyone was at home when the postman attempted delivery of the certified letter or left the two notices at the Pennsylvania address.

It may be argued, however, that one can infer that a party has refused notice or has actual knowledge of judicial proceedings when a party, such as defendant, fails to pick up his mail from the

post office after two notices have been left at his apparent address informing him that the post office has a letter for him. We do not believe that such evidence, standing alone, supports such an inference. We note that a postal notice generally only informs a party that the post office has a letter for him or her; it does not tell the party the identity of the person who sent the letter or what is in the letter. Although defendant here stated that his ex-wife "has harassed me with dozens of motions and complaints through the years," we do not think, in light of defendant's assertion that he was never aware of the Florida proceeding, that the evidence in this case supports the conclusion that defendant actually knew that the certified letter being held at the post office was from his ex-wife notifying him that she was suing him again.

In support of this conclusion, we note the Florida decision which indicated that a failure to pick up one's mail, standing alone, does not amount to a refusal to accept notice of a pending lawsuit. In *Lendsay v. Cotton*, 123 So. 2d 745 (Fla. Dist. Ct. App. 1960), the only evidence that defendant had refused service of process was: 1) a registered letter addressed to the defendant but returned to the sender marked "unclaimed"; and 2) evidence that several postal notices had been sent to the defendant's address indicating that the post office was holding a registered letter for him. It appears to us that this is precisely the same evidence upon which the trial court in the case at bar relied in determining that Paul Boyles had received adequate notice of the Florida proceeding. In *Lendsay*, the Florida Court of Appeals articulated two inferences that may be drawn when a letter is returned marked "unclaimed":

> The fact that the appellant did not claim the registered letter is susceptible not only to the inference that he refused to do so, but is also susceptible to the inference that he did not then live at the address to which the letter was directed.

*Id.* at 747.[2] The Florida court then concluded that the defendant "did not receive or refused to receive this letter." *Id.*

---

2. We agree with the majority opinion in the court below in noting that, "the facts suggest at least one other inference—that the appellant was on vacation or temporarily absent from the home at the time the notices were left." *Boyles v. Boyles*, 59 N.C. App. at 394, 297 S.E. 2d at 408.

*Lendsay* thus articulated two inferences that arise when a letter is returned "unclaimed": 1) that the defendant refused service, and 2) that the defendant did not then live at that address. In analyzing the case, however, the Florida court did not require a showing that defendant did not then live at the posted address in reversing the trial court's determination that defendant had refused service of process. Significantly, the appellate court impliedly assumed not only that the defendant may have lived at the posted address but also that he may have received the several notices the postal authorities left him at his address because it indicated, nevertheless, that the defendant was under no duty to go to the post office to pick up his mail. In quoting favorably from a Delaware Supreme Court decision holding that a defendant is under no duty to help the plaintiff complete service, the Florida court wrote:

> "There was no duty upon him to help the plaintiff complete the service [by going to the post office to pick up the letter] any more than there is a duty upon a resident defendant to go to the Sheriff's office in response to a phone call for the purpose of accepting personal service of a writ. This is not the case where the defendant made it impossible for the plaintiff to comply with the act, for, even after the return of the original letter, the plaintiff could have caused another one to be delivered or tendered to the defendant by sending it special delivery. *See Wise v. Herzog*, 72 App. D.C. 335, 114 F. 2d 486."

*Lendsay v. Cotton*, 123 So. 2d at 747, *quoting Paxson v. Crowson*, 8 Terry 114, 117, 47 Del. 114, 117, 87 A. 2d 881, 882 (1952). In the case at bar, plaintiff did not send a second letter or use any other alternate method of providing defendant with actual notice of the proceeding. No constructive notice was attempted. Accordingly, the evidence was insufficient for the trial court to find that defendant received actual notice of the proceeding, or that he refused such notice or that he concealed his whereabouts so as to avoid receipt of notice. We hold, therefore, that the evidence was insufficient to support the trial court's finding that defendant received adequate notice under Florida law.

The default judgment rendered by the Florida court is therefore void and subject to collateral attack because the defend-

ant did not receive adequate notice in compliance with the Florida standard of reasonable notice under *Kosch.* Being invalid under Florida law, the judgment is not entitled to full faith and credit in North Carolina.

In holding that the Florida judgment rendered was void under Florida law, we need not address defendant's contention that the Florida judgment was void because it was rendered in violation of defendant's constitutional right to due process in that the notice given failed to meet the standard of reasonableness demanded under the fourteenth amendment of the United States Constitution.

The decision of the Court of Appeals is affirmed.

Affirmed.

Justice MARTIN dissenting.

I dissent from the majority opinion. This appeal involves only the question whether defendant had adequate notice of the hearing in the Florida court. No question of jurisdiction over the defendant arises. He appeared personally in the trial of the action in Florida; in fact, Paul W. Boyles was the plaintiff in the original lawsuit in Florida.

The validity of the notice and resulting judgment in the Florida case is determined by the law of Florida. *Dansby v. Insurance Co.,* 209 N.C. 127, 183 S.E. 521 (1936). North Carolina must give full faith and credit to the judgments of Florida courts pursuant to article IV, section 1, of the Constitution of the United States. *Thomas v. Frosty Morn Meats,* 266 N.C. 523, 146 S.E. 2d 397 (1966). Where the Florida court has litigated and determined the issue of notice in the very case being enforced in North Carolina, we must give full faith and credit to such determination. *Underwriters Assur. v. North Carolina Life,* 455 U.S. 691, 71 L.Ed. 2d 558 (1982). Here, the Florida court did litigate and determine the issue of the validity of notice. It was not a "mere recital in the judgment" that the Florida court had jurisdiction. Judge Christie, the Florida judge who presided over both Florida proceedings, found that "[the court is] advised that notice was sent to the plaintiff, Paul W. Boyles, advising him of the Motion for

Money Judgment and the date of said hearing, said notice being provided timely and in accordance with the laws of the State of Florida . . . ." The exhibits supporting the service on Paul Boyles by certified mail were before the Florida court.

North Carolina is bound by the Florida judgment which has expressly determined the issue of notice. True, the present defendant was not present when the issue was determined, but that is irrelevant. It is the court that must have resolved the issue, otherwise a party could thwart the court's resolution of such issues by merely refusing to attend the court proceedings. Such cannot be the law.

The Florida court is presumed to know the law of Florida. In determining the issue of notice, the Florida case of *Lendsay v. Cotton*, 123 So. 2d 745 (Fla. Dist. Ct. App. 1960), provides logic to support Judge Christie's ruling. *Lendsay* held that where a registered letter was unclaimed, two inferences arose: (1) the party refused to claim the letter, or (2) he did not live at the address to which the letter was directed. In the *Boyles* case, all the evidence shows that at the time the letter was mailed, defendant lived at 205 Lenape Drive, Berwyn, Pennsylvania 19312, the address on the letter. As stated in defendant's brief, he did not deny that he lived at this address in March 1971. Two notices of the letter were left at this address. Therefore, the only remaining inference is that Dr. Boyles refused the letter. Under Florida law, this is sufficient notice. *See Cherry v. Heffernan*, 132 Fla. 386, 182 So. 427 (1938). Therefore, this Court is bound by the determination of the Florida court that the notice to defendant of the hearing on this motion in the cause was lawful under Florida law, and we must give full faith and credit to the judgment entered by that court. *Thomas v. Frosty Morn Meats, supra*, 266 N.C. 523, 146 S.E. 2d 397 (1966). The majority explicitly refrained from discussing any constitutional due process issues. I vote to reverse the decision of the Court of Appeals.

Chief Justice BRANCH joins in this dissent.