IN THE SUPREME COURT OF NORTH CAROLINA

No. 75PA13

FILED 12 JUNE 2014

DOCRX, INC.

v.

EMI SERVICES OF NORTH CAROLINA, LLC

On discretionary review pursuant to N.C.G.S. ' 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 738 S.E.2d 199 (2013), vacating an order entered on 6 February 2012 by Judge W. David Lee in Superior Court, Stanly County, and remanding for further proceedings. Heard in the Supreme Court on 7 January 2014.

*Henson & Talley, LLP, by Karen Strom Talley and Perry C. Henson, Jr., for plaintiff-appellee.*

*Chapman Law Group, PLC, by Avery S. Chapman, pro hac vice; and Tin, Fulton, Walker & Owen, PLLC, by Sam McGee, for defendant-appellant.*

PARKER, Chief Justice.

The issue in this case is whether the Court of Appeals erred by holding that the Full Faith and Credit Clause precludes the use of intrinsic fraud to defeat a foreign monetary judgment pursuant to North Carolina's Uniform Enforcement of Foreign Judgment Act and N.C.G.S. § 1A-1, Rule 60(b)(3). For the reasons stated herein, we modify and affirm the decision of the Court of Appeals.

DocRx, Inc. (plaintiff), an Alabama corporation, filed a breach of contract

action against EMI Services of North Carolina, LLC (defendant) in Mobile County, Alabama on 6 August 2010. The complaint alleged that defendant failed to pay plaintiff the agreed upon commission from defendant's pharmaceutical sales under a contract the parties entered on 28 June 2010. Specifically, the complaint alleged that defendant failed to pay plaintiff "25% of all net profits of [defendant's] sales made of products supplied . . . by [an intermediate company]" located by plaintiff. The complaint sought, *inter alia*, "compensatory damages, plus interest and costs" but did not allege a specific monetary amount of damages. Defendant did not respond to the complaint, and an initial default judgment was entered on 24 September 2010.

During the default proceedings in Alabama, Brian Ward (Ward), the President and CEO of plaintiff corporation, filed an affidavit with the court in which he stated that defendant sold 3,504 units "for $500 per unit, for a total profit of $475 per unit." Plaintiff's counsel filed a Motion To Enter Default Judgment Amount adopting Ward's statement. Plaintiff's counsel calculated that defendant's total net profits for the sale of the units was $1,664,400 and that plaintiff was entitled to a commission payment of $416,100, which represented 25% of defendant's total net profits. Plaintiff's counsel also alleged that plaintiff was entitled to recover reasonable attorneys' fees in the amount of $12,587.14 and interest on the breach of contract claim in the amount of $24,996. On 1 April 2011, the Circuit Court of Mobile County, Alabama entered a second default judgment against defendant for

$453,683.14 (the Alabama judgment).

On 2 August 2011, plaintiff filed a Request To File Foreign Judgment in the Superior Court in Stanly County, North Carolina. Plaintiff presented a certified copy of the Alabama judgment. On 25 August 2011, defendant filed a Motion For Relief From And Notice Of Defense To Foreign Judgment. Defendant argued, *inter alia*, that the Alabama judgment was obtained by extrinsic fraud. On 2 December 2011, plaintiff filed a Motion To Dismiss Defendant's Defense Of Extrinsic Fraud Pursuant To Rule 12(b)(6) Of The North Carolina Rules Of Civil Procedure and a Motion To Enforce Foreign Judgment As A North Carolina Judgment.

Defendant filed an Amended Motion For Relief From And Notice Of Defense To Foreign Judgment on 17 January 2012 in which it added defense based on fraud, pursuant to N.C.G.S. § 1A-1, Rule 60(b). Defendant argued that Ward and plaintiff's counsel falsely inflated the amount of damages owed plaintiff in their respective filings in Alabama. In support of its motion, defendant submitted an affidavit of Douglas R. Smith, Jr. (Smith), a representative of defendant. In his affidavit Smith stated that Ward and plaintiff's counsel knew their statements regarding the amount of damages were false because of emails Ward sent defendant. Smith alleged that on 18 June 2010, Ward sent two emails to defendant wherein he acknowledged that the selling price per unit was $67, not $500 as alleged by Ward and plaintiff's counsel. Smith further alleged that Ward and plaintiff's counsel knew that their statements were false because on 12 July 2010,

Ward sent an email to defendant wherein he acknowledged the selling price per unit to pharmacies and wholesalers was $45. Ward's emails were attached as exhibits to Smith's affidavit.

On 30 January 2012, Ward and plaintiff's counsel both filed affidavits in opposition to defendant's Amended Motion For Relief From And Notice Of Defense To Foreign Judgment. In his affidavit Ward stated that the emails dated 18 June 2010 predated the contract between plaintiff and defendant and referred to pharmaceutical sales that took place prior to the execution of the Agreement. Ward further alleged that the email dated 12 July 2010 referred to a rate that was established for plaintiff's clients during the initial business relationship between the parties.

The trial court heard the matter on 30 January 2012 and entered an order denying plaintiff's motion to enforce the Alabama judgment as a judgment of the State of North Carolina on 6 February 2012. In its order the trial court first determined that the affidavits and exhibits submitted by defendant supported defendant's argument that plaintiff obtained the Alabama judgment as a result of fraud. The trial court then stated that under N.C.G.S. § 1C-1703(c), a provision of North Carolina's Uniform Enforcement of Foreign Judgments Act (UEFJA), the Alabama judgment was " 'subject to the same defenses as a judgment of this State.' " The trial court explained that under Rule 60(b)(3) of the North Carolina Rules of Civil Procedure, relief from enforcement of a judgment was available if the trial

court determined "that there was 'fraud (whether heretofore denominated *intrinsic* or *extrinsic*), misrepresentation, or other misconduct of an adverse party.' " Finally, the trial court concluded that "in accordance with NCRCP 60(b)(3) the intrinsic fraud, misrepresentation and misconduct of the plaintiff in obtaining the underlying Alabama judgment precludes enforcement of the Alabama judgment as a judgment of this State." Plaintiff gave timely notice of appeal to the Court of Appeals.

On appeal plaintiff argued that the trial court erred in denying its motion to enforce the Alabama judgment as a judgment of the State of North Carolina, contending that under the Full Faith and Credit Clause of the United States Constitution a state may only deny enforcement of a sister state's judgment for extrinsic fraud, not intrinsic fraud.

The Court of Appeals vacated the trial court's order denying enforcement of the Alabama judgment and remanded for further proceedings. *DocRx, Inc. v. EMI Servs. of N.C., LLC*, ___ N.C. App. ___, ___, 738 S.E.2d 199, 204 (2013). The court below recognized that the interplay among the Full Faith and Credit Clause, N.C.G.S. § 1A-1, Rule 60(b), and our UEFJA is an issue of first impression in this State. *Id.* at ___, 738 S.E.2d at 201-02. The Court of Appeals noted that "[t]raditionally, foreign judgments have been subject to attacks on limited grounds," requiring a showing "that the court lacked jurisdiction, or that the judgment was procured through fraud." *Id.* at ___, 738 S.E.2d at 201 (emphasis and quotation marks omitted) (citing *Thomas v. Frosty Morn Meats, Inc.*, 266 N.C. 523, 146 S.E.2d

397 (1966)). The court also recognized that the UEFJA, enacted in 1989, states, in pertinent part, that a foreign judgment " 'has the same effect and is subject to the same defenses as a judgment of this State and shall be enforced or satisfied in like manner[.]' " *Id.* at ___, 738 S.E.2d at 202 (brackets in original) (quoting N.C.G.S. § 1C-1703(c) (2011)). The Court of Appeals acknowledged that the plain language of the UEFJA would seem to allow a foreign judgment debtor to utilize any defense applicable to a domestic judgment, such as Rule 60(b). *Id.* at ___, 738 S.E.2d at 202.

However, relying on cases from Utah, Montana, and Colorado that have interpreted similar statutes, the court below held that in North Carolina " 'the remedies available under Rule . . . 60 are limited by the Full Faith and Credit Clause of the United States Constitution when a foreign judgment is at issue.' " *Id.* at ___, 738 S.E.2d at 202-03 (quoting *Bankler v. Bankler*, 963 P.2d 797, 799-800 (Utah Ct. App. 1998)). The court adopted the rule articulated by the Colorado Court of Appeals in *Craven v. Southern Farm Bureau Casualty Insurance Co.*, 117 P.3d 11, 14 (Colo. App. 2004), and then concluded that "intrinsic fraud, misrepresentation and misconduct" were not sufficient grounds under the Full Faith and Credit Clause to deny plaintiff's motion to enforce the Alabama judgment. *Id.* at ___, 738 S.E.2d at 203. This Court allowed defendant's petition for discretionary review.

Before this Court defendant argues that the Full Faith and Credit Clause does not limit attack on fraudulent foreign judgments to those obtained by extrinsic

fraud. Defendant contends that the decision of the Court of Appeals improperly gives foreign judgments more deference than domestic judgments because a foreign judgment cannot be attacked for intrinsic fraud under Rule 60(b) and the UEFJA, but a domestic judgment can be attacked on such grounds. We disagree.

The central issue in this case is whether the Full Faith and Credit Clause requires North Carolina courts to enforce the Alabama monetary judgment. This issue involves a question of law, which we review de novo. *State v. Cox*, 367 N.C. 147, 151, 749 S.E.2d 271, 275 (2013).

To determine this issue, we look first to the language of the Full Faith and Credit Clause and the United States Supreme Court's jurisprudence interpreting this constitutional provision. The Full Faith and Credit Clause of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. Const. art. IV, § 1. Pursuant to that clause Congress has prescribed:

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738 (2012). The purpose of the full faith and credit command

"was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin."

*Baker v. Gen. Motors Corp.*, 522 U.S. 222, 232, 139 L. Ed. 2d 580, 591 (1998) (quoting *Milwaukee Cnty. v. M.E. White Co.*, 296 U.S. 268, 277, 80 L. Ed. 220, 228 (1935)).

Under United States Supreme Court decisions, the test for determining when the Full Faith and Credit Clause requires enforcement of a foreign judgment focuses on the validity and finality of the judgment in the rendering state. *See New York ex rel. Halvey v. Halvey*, 330 U.S. 610, 91 L. Ed. 1133 (1947); *Morris v. Jones*, 329 U.S. 545, 91 L. Ed. 488 (1947). In *Morris v. Jones*, Morris brought suit in Missouri against Chicago Lloyds, an Illinois insurance company authorized to do business in Missouri, for malicious prosecution and false arrest. 329 U.S. at 546-47, 91 L. Ed. at 493. Before a judgment was obtained in Missouri, Chicago Lloyds was ordered into liquidation in Illinois, and a liquidator was appointed. *Id.* at 547, 91 L. Ed. at 493. The Illinois court set "a time for the filing of claims against Chicago Lloyds and issued an order staying suits against it." *Id.* Morris had notice of the stay order but continued to prosecute his suit in Missouri. *Id.* Chicago Lloyds's counsel withdrew from the Missouri suit, "stating to the Missouri court that the Illinois liquidation proceedings had vested all the property of Chicago Lloyds in the

liquidator." *Id.* Thereafter, Morris obtained a judgment against Chicago Lloyds in Missouri and filed a proof of claim in the Illinois proceedings, attaching a copy of his Missouri judgment. *Id.* The Illinois Supreme Court upheld an order disallowing the claim, notwithstanding Morris's argument that allowance of the claim was mandated by the Full Faith and Credit Clause. *Id.* The United States Supreme Court allowed Morris's petition for certiorari.

Before the United States Supreme Court, Jones, the statutory liquidator appointed by the Illinois court, contended that the Illinois Supreme Court correctly concluded that title to all property of Chicago Lloyds was vested in the liquidator and was not subject to the process of any other court. *Id.* at 548, 91 L. Ed. at 494. The Illinois court further concluded "that if a liquidator had been appointed in Missouri, [Morris] could not have obtained his judgment or if he had obtained it, he could not have enforced it against the property in the hands of the Missouri liquidator." *Id.* (citation omitted). Accordingly, the Illinois court determined that disallowance of the Missouri judgment in the Illinois proceedings gave the Missouri judgment "the same effect that it would have had under the same circumstances in Missouri." *Id.*

The Supreme Court initially made clear that Morris was "not seeking . . . anything other than the right to prove his claim in judgment form." *Id.* The Supreme Court then reasoned as follows:

"A judgment of a court having jurisdiction of the

parties and of the subject matter operates as *res judicata*, in the absence of fraud or collusion, even if obtained upon a default." Such a judgment obtained in a sister State is . . . entitled to full faith and credit in another State, though the underlying claim would not be enforced in the State of the forum. It is no more important that the suit on this underlying claim could not have been maintained in Illinois after the liquidator had been appointed than the fact that a statute of limitations of the State of the forum might have barred it. . . . The full faith and credit to which a judgment is entitled is the credit which it has in the State from which it is taken, not the credit that under other circumstances and conditions it might have had.

Under Missouri law petitioner's judgment was a final determination of the nature and amount of his claim. That determination is final and conclusive in all courts.

. . . .

. . . The command [of the federal statute implementing the Full Faith and Credit Clause] is to give full faith and credit to every judgment of a sister State. And where there is no jurisdictional infirmity, exceptions have rarely, if ever, been read into the constitutional provision or the Act of Congress in cases involving money judgments rendered in civil suits.

*Id.* at 550-53, 91 L. Ed. at 495-97 (citations omitted). The Court in *Morris* concluded "that the nature and amount of petitioner's claim has been conclusively determined by the Missouri judgment and may not be relitigated in the Illinois proceedings, it not appearing that the Missouri court lacked jurisdiction over either the parties or the subject matter." *Id.* at 554, 91 L. Ed. at 497-98.

*New York ex rel. Halvey v. Halvey* involved a New York court's modification of

a child custody decree rendered in Florida. 330 U.S. at 611-12, 91 L. Ed. at 1134-35. The United States Supreme Court determined that since a Florida court could modify the custody decree, it was not res judicata and the modification by the New York Court did not violate the Full Faith and Credit Clause. *Id.* at 613-14, 91 L. Ed. at 1135-36. In reaching this decision, the Court stated:

> The general rule is that [the Full Faith and Credit Clause] requires the judgment of a sister State to be given full, not partial, credit in the State of the forum. But a judgment has no constitutional claim to a more conclusive or final effect in the State of the forum than it has in the State where rendered. If the court of the State which rendered the judgment had no jurisdiction over the person or the subject matter, the jurisdictional infirmity is not saved by the Full Faith and Credit Clause. . . . Whatever may be the authority of a State to undermine a judgment of a sister State on grounds not cognizable in the State where the judgment was rendered, it is clear that the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered.

*Id.* at 614-15, 91 L. Ed. at 1136 (citations omitted). The Court then concluded that "[i]t is not shown that the New York court in modifying the Florida decree exceeded the limits permitted under Florida law. There is therefore a failure of proof that the Florida decree received less credit in New York than it had in Florida." *Id.* at 615, 91 L. Ed. at 1136.

Thus, if the foreign judgment is valid and final in the rendering state, it is conclusive in the forum state and is entitled to receive full faith and credit. *See Morris*, 329 U.S. at 554, 91 L. Ed. at 497-98. If the foreign judgment can be

modified in the rendering state, it is not conclusive and can be modified by the forum state. *Halvey,* 330 U.S. at 614-15, 91 L. Ed. at 1136.

The UEFJA enacted in North Carolina sets out the procedure for filing a foreign judgment. N.C.G.S. §§ 1C-1701 to -1708 (2013). Section 1C-1703(c) states that "[a] judgment so filed has the same effect and is subject to the same defenses as a judgment of this State and shall be enforced or satisfied in like manner." N.C.G.S. § 1C-1703(c). A foreign judgment debtor may seek relief from the foreign judgment on the grounds that it "has been appealed from" or "stayed by" the rendering court "or on any other ground for which relief from a judgment of this State would be allowed." N.C.G.S. § 1C-1705(a).

Defendant contends that the phrase "is subject to the same defenses as a judgment of this State," N.C.G.S. § 1C-1703(c), entitles it to challenge the Alabama judgment under Rule 60(b) of the North Carolina Rules of Civil Procedure and that the trial court was, therefore, correct in denying plaintiff's motion to enforce the Alabama judgment on the ground that it was obtained by "intrinsic fraud, misrepresentation and misconduct of the plaintiff," namely, false testimony as to the amount of defendant's indebtedness to plaintiff. Defendant asserts that because Rule 60(b)(3) of the Alabama Rules of Civil Procedure, like Rule 60(b)(3) of the North Carolina Rules of Civil Procedure, provides for relief from a judgment for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party," Ala. R. Civ. P. 60(b)(3), both the Full

Faith and Credit Clause and the UEFJA are satisfied. *See* N.C.G.S. § 1A-1, Rule 60(b)(3) (2013).

This Court has not previously addressed the interplay among the Full Faith and Credit Clause, North Carolina's UEFJA, and Rule 60(b) of the North Carolina Rules of Civil Procedure. However, other state supreme courts that have considered the interplay between the Full Faith and Credit Clause and the UEFJA have rejected the argument that the judgment of the rendering state can be reopened in the forum state under Rule 60 of the Rules of Civil Procedure. For example, in *Matson v. Matson*, the Minnesota UEFJA provided that "*[a] judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a district court or the supreme court of this state, and may be enforced or satisfied in like manner.*" 333 N.W.2d 862, 867 (Minn. 1983) (en banc) (quoting Minn. Stat. § 548.27 (1982) (emphasis added)). Interpreting this provision, the Supreme Court of Minnesota stated:

> Appellant is under the misconception that the above-emphasized language allows the courts of this state to apply Minn.R.Civ.P. 60.02 to foreign judgments in the same manner it is applied to judgments of the courts of this state. It has been settled by the United States Supreme Court and courts of other states that the power of a state to reopen or vacate a foreign judgment is more limited than under the rules of civil procedure and that a foreign judgment cannot be collaterally attacked on the merits. After a foreign judgment has been duly filed, the grounds for reopening or vacating it are limited to lack of personal or subject matter jurisdiction of the rendering court, fraud in procurement (extrinsic), satisfaction, lack

> of due process, or other grounds that make a judgment
> invalid or unenforceable. The nature and amount or other
> aspects of the merits (i.e., defenses) of a foreign judgment
> cannot be relitigated in the state in which enforcement is
> sought. *See Morris v. Jones,* 329 U.S. 545, 67 S.Ct. 451, 91
> L.Ed. 488 (1946).

*Id.* at 867-68 (citations omitted).

Similarly, the Supreme Court of Nevada stated that "the defenses preserved by Nevada's Uniform Enforcement of Foreign Judgments Act and available under NRCP 60(b) are limited to those defenses that a judgment debtor may constitutionally raise under the full faith and credit clause and which are directed to the validity of the foreign judgment." *Rosenstein v. Steele*, 103 Nev. 571, 573, 747 P.2d. 230, 232 (1987) (per curiam) (citations omitted); *see also Marworth, Inc. v. McGuire*, 810 P.2d 653, 657 (Colo. 1991) (en banc) (stating that under the Colorado UEFJA "[o]ur courts may consider C.R.C.P. 60(b) motions for relief from a foreign judgment only to the extent permitted by the full faith and credit clause"); *Carr v. Bett*, 1998 MT 266, ¶42, 291 Mont. 326, 338-39, 970 P.2d 1017, 1024 (1998) (holding that a foreign judgment filed under the Montana UEFJA may not "be subjected to the same defenses and proceedings for reopening or vacating as a domestic judgment, and remain consistent with full faith and credit. . . . [T]he only defenses that may be raised to destroy the full faith and credit obligation owed to a final judgment are those defenses directed at the validity of the foreign judgment"); *Wooster v. Wooster*, 399 N.W.2d 330, 333 (S.D. 1987) (stating that "the *grounds*

mentioned in Rule 60(b) which allow relief from a judgment are not available to vacate a foreign judgment" under the South Dakota UEFJA); *Salmeri v. Salmeri*, 554 P.2d 1244, 1248 (Wyo. 1976) (holding that a foreign judgment for alimony and child support arrearages was "not subject to attack in [Wyoming] except on grounds that would permit attack upon any other money judgment, such as want of jurisdiction in the court entering the judgment or lack of service so as to vest jurisdiction over the defendant").

This interpretation of the UEFJA also finds support in the Prefatory Note to the 1964 Revised Uniform Enforcement of Foreign Judgments Act, stating that the UEFJA as revised

> adopts the practice which, in substance, is used in Federal courts. It provides the enacting state with a speedy and economical method of doing that which it is required to do by the Constitution of the United States. It also relieves creditors and debtors of the additional cost and harassment of further litigation which would otherwise be incident to the enforcement of the foreign judgment. This act offers the states a chance to achieve uniformity in a field where uniformity is highly desirable. Its enactment by the states should forestall Federal legislation in this field.

Rev. Unif. Enforcement of Foreign Judgments Act prefatory note (1964), 13 U.L.A. 156-57 (2002) [hereinafter Rev. UEFJA prefatory note]. The federal statute, after providing for the registration of a judgment in any other district, mentions only one defense, satisfaction, but does allow that "[t]he procedure prescribed under this section is in addition to other procedures provided by law for the enforcement of

judgments." 28 U.S.C. § 1963 (2012).

Defendant relies primarily on two intermediate court of appeals cases, one from Ohio and one from Minnesota. Both cases can be distinguished from the present case. In *Schwartz v. Schwartz* the defendant's second wife sought an annulment in Ohio on the ground that their marriage was null and void because the defendant's previous divorce in New York had been obtained by fraud. 113 Ohio App. 275, 276, 173 N.E.2d 393, 393-94 (1960). An Ohio Court of Appeals granted the annulment after determining that the New York divorce decree was not entitled to full faith and credit when there was evidence of a prearranged, staged act of adultery in order to obtain the divorce. *Id.* at 276, 279-80, 173 N.E.2d at 393, 395-96. The court reasoned that the New York court could set aside the divorce on its own motion for fraud on the court. *Id.* at 279, 173 N.E.2d at 395. Adultery was the only ground for divorce in New York, and without an act of adultery, the court had no authority to enter the divorce. *Id.* at 276, 279, 173 N.E.2d at 393, 395. Thus, since the rendering New York court could have set aside the divorce, the divorce was not entitled to full faith and credit in Ohio under *Halvey v. Halvey*. In the present case, the Alabama court had the authority to enter a judgment on plaintiff's breach of contract claim. Ala. Code § 12-11-30 (2013).

In *Blume Law Firm PC v. Pierce*, the Minnesota Court of Appeals considered whether an Arizona judgment should be entitled to full faith and credit when it was alleged that the judgment was obtained through an attorney's fraudulent

misrepresentations in his affidavit in support of the judgment. 741 N.W.2d 921, 926-27 (Minn. Ct. App. 2007). The law firm sued a client and his parents for unpaid legal fees. *Id.* at 924. In the affidavit, the attorney alleged that a valid promissory note and security agreement were entered into by the client and his father. *Id.* at 926. The Arizona court held the parents liable for their son's attorneys' fees. *Id.* at 924, 926. The promissory note and security agreement referenced in the attorney's affidavit were contained in the record in Minnesota, but those documents were signed only by the son. *Id.* at 927. At oral argument before the Court of Appeals of Minnesota, the plaintiff law firm was unable to provide a basis for holding either parent liable. *Id.* The Court of Appeals stated that the allegations sounded in fraud and remanded the case to the trial court to give the law firm the opportunity to demonstrate the basis for suing the parents. *Id.* The court did not distinguish between extrinsic and intrinsic fraud, but instructed that if the law firm was "unable to substantiate its claim," the trial court "should then determine whether the law firm's conduct amounts to fraud that would justify disregarding the judgment." *Id.* In the present case, defendant's evidence of the amount owed, consisting of emails from which inferences can be drawn, differs markedly from a signed promissory note and security agreement. The emails do not demonstrate on their face that plaintiff's representations were false, and the record contains no document disclosing to whom and for how much defendant sold the pills as required by the terms of the fee agreement at issue in this case. Moreover, the Minnesota

Court of Appeals did not hold that the allegations constituted fraud; the court merely stated the allegations sounded in fraud and remanded the case to the trial court.

We hold that the defenses preserved under North Carolina's UEFJA are limited by the Full Faith and Credit Clause to those defenses which are directed to the validity and enforcement of a foreign judgment. The language of the UEFJA that a foreign judgment "has the same effect and is subject to the same defenses as a judgment of this State and shall be enforced or satisfied in like manner," N.C.G.S. § 1C-1703(c), does not refer to defenses on the merits but rather refers to defenses directed at the enforcement of a foreign judgment, such as, that the judgment creditor committed extrinsic fraud, that the rendering state lacked personal or subject matter jurisdiction, that the judgment has been paid, that the parties have entered into an accord and satisfaction, that the judgment debtor's property is exempt from execution, that the judgment is subject to continued modification, or that the judgment debtor's due process rights have been violated. *See Halvey*, 330 U.S. at 614-15, 91 L. Ed. at 1136; *Morris,* 329 U.S. at 554, 91 L. Ed. at 497-98; *White Co.*, 296 U.S. at 275-76, 80 L. Ed. at 227; *Matson*, 333 N.W.2d at 867; *Thomas*, 266 N.C. at 526, 146 S.E.2d at 400. To permit a party to relitigate matters that could have and should have been litigated in the rendering court is inconsistent with decisions of the United States Supreme Court holding that judgments that are valid and final in the rendering state are entitled to enforcement in the forum state under

the Full Faith and Credit Clause. *See Halvey*, 330 U.S. 610, 91 L. Ed. 1133; *Morris*, 329 U.S. 545, 91 L. Ed. 488. Further, to permit a party to collaterally attack a foreign judgment on the merits would be contrary to the rationale underlying the UEFJA, which is to streamline the procedure for enforcing a foreign judgment and eliminate the need for additional litigation. Rev. UEFJA prefatory note.

Moreover, even if the UEFJA and Rule 60(b) permit a foreign judgment debtor to raise intrinsic fraud as a defense to the foreign judgment, on the record before this Court, defendant would be barred from asserting that defense. Alabama's Rule 60(b) requires a judgment debtor to raise fraud within four months of entry of the judgment. Ala. R. Civ. P. 60(b).

In the present case a default judgment against defendant in the amount of $453,683.14 was entered on 1 April 2011 in Alabama, and the Request To File Foreign Judgment was filed in Stanly County on 2 August 2011. Defendant's initial Motion For Relief From And Notice Of Defense To Foreign Judgment was filed on 25 August 2011. In that filing defendant asserted, *inter alia*: "**Extrinsic Fraud.** The Alabama foreign judgment is void and unenforceable because the underlying judgment was obtained by fraud – EMI's execution of the contract upon which the Alabama Complaint was based was fraudulently induced and DocRx engaged in fraudulent acts in its own alleged performance of that contract." On 17 January 2012, defendant filed an Amended Motion For Relief From And Notice Of Defense To Foreign Judgment. In that filing defendant raised a defense under Rule 60(b)(3)

of the North Carolina Rules of Civil Procedure, alleging that plaintiff's representations as to the amount owed constituted fraud, whether intrinsic or extrinsic.

By the time the Alabama judgment was filed in Stanly County, the four-month period for raising a challenge to the judgment under Alabama Rule of Civil Procedure 60(b)(3) had passed, and the judgment was a final judgment under Alabama law. Irrespective of whether the alleged fraud was intrinsic or extrinsic, the Alabama judgment was final and enforceable in Alabama when it was filed in North Carolina. Thus, plaintiff's claim had been conclusively determined in Alabama.

Therefore, we hold that the Alabama judgment is a final judgment, and under *Morris v. Jones* it is entitled to the same credit in North Carolina that it would be accorded in Alabama. The defenses to a foreign judgment under the UEFJA are limited by the Full Faith and Credit Clause to those defenses that are directed to the enforcement of the foreign judgment, and Rule 60(b) of the North Carolina Rules of Civil Procedure has no applicability.

Defendant's argument that the Court of Appeals decision should be reversed because a foreign judgment creditor would get better treatment than a North Carolina judgment creditor is misplaced and does not comport with the United States Supreme Court's language in *Morris v. Jones* and *Halvey v. Halvey* emphasizing that the validity and finality of the judgment in the rendering state

control whether that judgment is entitled to full faith and credit in the forum state. The UEFJA is not on a parity with the Full Faith and Credit Clause. U.S. Const. art. VI, cl. 2. In the present case the Alabama monetary judgment was valid and final in Alabama, and North Carolina cannot give the Alabama judgment less credit than it would be given in Alabama.

For the reasons stated herein, the decision of the Court of Appeals is affirmed, as modified. This case is remanded to the Court of Appeals for further remand to the trial court for additional proceedings not inconsistent with this opinion.

MODIFIED AND AFFIRMED; REMANDED.