IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1026

Filed:  7 July 2020

Mecklenburg County, No. 16 CVS 14363

ROBERT CLAY SPARROW and MICKEY CROWE, Plaintiffs

v.

FORT MILL HOLDINGS, LLC, and DAVID BAUCOM, Defendants

ROBERT CLAY SPARROW and MICKEY CROWE, Plaintiffs

v.

MAURER HOLDINGS, LLC, and DAVID BAUCOM, Defendants

Appeal by Defendants from Order entered 5 August 2019 by Judge Steve R. Warren in Mecklenburg County Superior Court.  Heard in the Court of Appeals 17 March 2020.

*Henderson, Nystrom, Fletcher & Tydings, PLLC, by John W. Fletcher III and Christine M. Lamb, for plaintiffs-appellees.*

*Cranford, Buckley, Schultze, Tomchin, Allen & Buie, P.A., by R. Gregory Tomchin and Joseph L. Ledford, for defendants-appellants.*

HAMPSON, Judge.

**Factual and Procedural Background**

Fort Mill Holdings, LLC (Fort Mill), Maurer Holdings, LLC (Maurer), and David Baucom (Baucom) (collectively, Defendants) appeal from an Order on the

Plaintiff's[1] Motion for Enforcement of Foreign Judgment (Enforcement Order) filed on 5 August 2019, concluding the foreign judgment from the Court of Common Pleas of York County, South Carolina (South Carolina Judgment), filed with the Clerk of Superior Court for Mecklenburg County remains in effect until satisfied. Relevant to this appeal, the Record before us tends to show the following:

On or about 1 December 2011, Robert Clay Sparrow (Sparrow) and Mickey Crowe (Crowe) (collectively, Plaintiffs) sold Defendants certain real property located in York County, South Carolina. Defendants financed the acquisition through two Purchase Money Promissory Notes (Notes) secured by two Mortgages totaling $1,191,800.00, naming Plaintiffs as the holders of the Notes and the mortgagees on the Mortgages. Both Notes specified they were "to be governed and construed in accordance with the laws of the State of North Carolina."

In June 2012, Defendants defaulted on the Notes, and Plaintiffs initiated two actions in the Court of Common Pleas of York County, South Carolina, on 8 February 2013. Plaintiffs sought judgment against Defendants, foreclosure of the Mortgages in the amounts due and owed under the Notes, and the right to seek deficiency judgments for the remaining balance of the Notes after a foreclosure sale of the real

---

[1] While the caption reflects two Plaintiffs, as set forth herein, the Record reflects Mickey Crowe assigned his interest in the Promissory Notes and Mortgages underlying this case to Robert Clay Sparrow. Although litigation in both North and South Carolina proceeded in the names of both Plaintiffs, ultimately, and as recognized by the trial court, only Plaintiff Sparrow filed the Motion for Enforcement of Foreign Judgment giving rise to the trial court's Order in this case.

property secured by the Mortgages. In response, Defendants filed a Motion to Dismiss Defendant Baucom and Answers and Counterclaims in both actions.

During the course of litigation in South Carolina, on 1 October 2014, Crowe decided to migrate away from this dispute and assigned his rights and interest in the Notes and Mortgages to Sparrow who proceeded to fly solo with the litigation. Prior to trial, the parties and their counsel participated in mediation pursuant to the South Carolina Alternative Dispute Resolution (ADR) Rules. On 7 October 2014, the parties and their counsel signed an agreement to settle the then-pending claims (Settlement Agreement). The South Carolina Court of Common Pleas described the terms of the Settlement Agreement as follows:

> Plaintiffs agreed to pay the outstanding real estate taxes on the property, so that the property would not be sold at a tax sale. On their part, Defendants agreed to execute a contingent confession of judgment in favor of Plaintiffs as follows: (1) Principal and Interest under the Notes for $1,356,752.10 (at 7% interest through October 7, 2014); (2) Real Property Taxes of $70,595.46; and, (3) the combined amount of (1) & (2) to bear interest at a rate of $273.74 per diem until the judgment was paid in full.
>
> Plaintiffs agreed not to file the confession of judgment until the earlier of October 7, 2015, or until the sale of the mortgaged properties by Defendants resulted in a deficiency. In such case, the confession of judgment would be reduced by the proceeds of the sales paid to Plaintiffs. If a sale of the properties resulted in excess proceeds over the judgment, the excess would go to Defendants. Additionally, Plaintiffs would release the mortgages on the two properties prior to closing of any *bona fide* sale of the property by Defendants.

Thereafter, and in accordance with the Settlement Agreement, Plaintiffs paid the outstanding real estate taxes on the property. Defendants, however, were unable to sell the property and refused to execute the confession of judgment as required by the Settlement Agreement. Consequently, Plaintiffs filed a motion to compel in the Court of Common Pleas, seeking enforcement of the terms of the Settlement Agreement.

After a hearing, the Court of Common Pleas entered the South Carolina Judgment on 30 March 2016. In its Judgment, the Court of Common Pleas found— "the terms of the [S]ettlement [A]greement are not ambiguous; nor was the [A]greement the a [sic] product of any fraud. The [A]greement was reduced to writing and signed by all parties and their counsel as required by Rule 43(k)" of the South Carolina Rules of Civil Procedure.[2] Defendants had also argued North Carolina's "anti-deficiency" statute[3] "prevents Plaintiffs from obtaining a deficiency judgment in the foreclosure action, and that therefore, [Defendants] are not required to execute the confession of judgment." The Court of Common Pleas, however, disagreed, concluding the North Carolina anti-deficiency statute was immaterial because "[t]he

---

[2] *See* S.C. R. Civ. Pro. 43(k) (2020) ("No agreement between counsel affecting the proceedings in an action shall be binding unless . . . reduced to writing and signed by the parties and their counsel.").

[3] *See* N.C. Gen. Stat. § 45-21.38 (2019) ("In all sales of real property by mortgagees . . . to secure to the seller the payment of the balance of the purchase price of real property, the mortgagee . . . secured by such mortgage . . . shall not be entitled to a deficiency judgment on account of such mortgage[.]").

present case pertains only to enforcement of a voluntary settlement agreement made in accordance with applicable South Carolina rules and case law." Further, the Court of Common Pleas concluded it would be substantially unfair to Plaintiffs if the Settlement Agreement was not enforced because Plaintiffs had already paid all the outstanding real estate taxes as consideration for entering into the Settlement Agreement. Accordingly, the Court of Common Pleas granted Plaintiffs' motion to compel enforcement of the Settlement Agreement and entered judgment against Defendants in the principal amount of $1,427,347.56 plus interest.

On 15 August 2016, pursuant to N.C. Gen. Stat. § 1C-1703, Plaintiffs enrolled the South Carolina Judgment with the Mecklenburg County Clerk of Superior Court. Plaintiffs served the Notice of Filing of Foreign Judgment on Defendants on 31 August 2016 and filed Defendants' Acceptance of Service of the Notice of Filing of Foreign Judgment on 23 September 2016. On 28 September 2016, Defendants filed a Motion for Relief from and Notice of Defense to Foreign Judgment alleging, *inter alia*, the South Carolina Judgment was in violation of the public policy of North Carolina because it is a deficiency judgment on two purchase-money notes in violation of N.C. Gen. Stat. § 45-21.38. Defendants also attached a copy of their notice of appeal to the South Carolina Court of Appeals, appealing the South Carolina Judgment.[4]

---

[4] On 11 July 2018, the South Carolina Court of Appeals filed an unpublished opinion affirming the South Carolina Judgment. *See Sparrow v. Fort Mill Holdings, LLC*, No. 2018-UP-321, 2018 WL 3387240 (S.C. Ct. App. July 11, 2018) (per curiam) (unpublished).

On 24 May 2019, Sparrow filed a Motion for Enforcement of Foreign Judgment (Enforcement Motion) seeking to enforce the South Carolina Judgment. Prior to the hearing on Sparrow's Enforcement Motion, Defendants filed a Memorandum of Law in Opposition to Plaintiff's Motion for Enforcement of a Foreign Judgment raising additional defenses that the South Carolina Judgment was procured by extrinsic fraud and in violation of due process. On 27 June 2019, the trial court held a hearing on Sparrow's Enforcement Motion, resulting in the trial court entering its Enforcement Order on 5 August 2019.

In its Enforcement Order, the trial court rejected Defendants' argument that enforcement of the South Carolina Judgment was precluded by North Carolina public policy and Defendants' "defenses of extrinsic fraud and violation of due process[.]" Instead, the trial court concluded the South Carolina Judgment "is a valid final judgment, enforceable in the rendering state of South Carolina when it was filed in North Carolina" and the South Carolina Judgment "is entitled to full faith and credit in North Carolina and to the same credit that it would be accorded in South Carolina." Accordingly, the trial court granted Sparrow's Enforcement Motion and decreed the South Carolina Judgment valid and enforceable against Defendants in North Carolina. On 27 August 2019, Defendants filed timely Notice of Appeal from the Enforcement Order.

**Issue**

The sole issue on appeal is whether in granting Sparrow's Enforcement Motion the trial court properly concluded the South Carolina Judgment is a valid final judgment entitled to full faith and credit in North Carolina and decreeing the South Carolina Judgment fully enforceable in North Carolina.

## Analysis

### I. Standard of Review

"We review *de novo* the issue of whether a trial court has properly extended full faith and credit to a foreign judgment." *Marlin Leasing Corp. v. Essa*, ___ N.C. App. ___, ___, 823 S.E.2d 659, 662-63 (2019) (citing *Tropic Leisure Corp. v. Hailey*, 251 N.C. App. 915, 917, 796 S.E.2d 129, 131 (2017)). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (citation and quotation marks omitted).

### II. Uniform Enforcement of Foreign Judgments Act

"The Full Faith and Credit Clause of the United States Constitution requires North Carolina to enforce a judgment rendered in another state, if the judgment is valid under the laws of that state." *Florida National Bank v. Satterfield*, 90 N.C. App. 105, 107, 367 S.E.2d 358, 360 (1988) (citations omitted). "[B]ecause a foreign state's judgment is entitled to only the same validity and effect in a sister state as it had in the rendering state, the foreign judgment must satisfy the requisites of a valid

judgment under the laws of the rendering state before it will be afforded full faith and credit." *Bell Atlantic Tricon Leasing Corp. v. Johnnie's Garbage Serv.*, 113 N.C. App. 476, 478-79, 439 S.E.2d 221, 223 (1994) (citation omitted). "[T]he test for determining when the Full Faith and Credit Clause requires enforcement of a foreign judgment focuses on the validity and finality of the judgment in the rendering state." *DocRx, Inc. v. EMI Servs. of N.C., LLC*, 367 N.C. 371, 375, 378, 758 S.E.2d 390, 393, 395 (2014) (citations omitted) ("[I]f the foreign judgment is valid and final in the rendering state, it is conclusive in the forum state and is entitled to receive full faith and credit." (citation omitted)).

"The Uniform Enforcement of Foreign Judgments Act [UEFJA] governs the enforcement of foreign judgments that are entitled to full faith and credit in North Carolina." *In re Gardner v. Tallmadge*, 207 N.C. App. 282, 287, 700 S.E.2d 755, 758-59 (2010) (citing N.C. Gen. Stat. §§ 1C-1701 *et seq.* (2009)), *aff'd per curiam*, 365 N.C. 102, 721 S.E.2d 928-29 (2011). "In order to domesticate a foreign judgment under the UEFJA, a party must file a properly authenticated foreign judgment with the office of the clerk of superior court in any North Carolina county along with an affidavit attesting to the fact that the foreign judgment is both final and unsatisfied in whole or in part and setting forth the amount remaining to be paid on the judgment." *Tropic Leisure Corp.*, 251 N.C. App. at 917, 796 S.E.2d at 131 (citing N.C. Gen. Stat. § 1C-1703(a) (2015)).

"The introduction into evidence of [these materials] establishes a presumption that the [foreign] judgment is entitled to full faith and credit." *Lust v. Fountain of Life, Inc.*, 110 N.C. App. 298, 301, 429 S.E.2d 435, 437 (1993) (citations omitted). A foreign judgment may be collaterally attacked only on the grounds "that the judgment creditor committed extrinsic fraud, that the rendering state lacked personal or subject matter jurisdiction, that the judgment has been paid, that the parties have entered into an accord and satisfaction, that the judgment debtor's property is exempt from execution, that the judgment is subject to continued modification, or that the judgment debtor's due process rights have been violated." *DocRx, Inc.*, 367 N.C. at 382, 758 S.E.2d at 397 (citations omitted); *see also* N.C. Gen. Stat. § 1C-1708 (2019) (precluding enforcement of "foreign judgments based on claims which are contrary to the public policies of North Carolina"). "In the absence of such proof, the judgment will be presumed valid." *Rossi v. Spoloric*, 244 N.C. App. 648, 655, 781 S.E.2d 648, 654 (2016) (citation and quotation marks omitted).

In this case, Plaintiffs had the initial burden of proving the South Carolina Judgment is entitled to full faith and credit in North Carolina. Plaintiffs satisfied this burden by attaching an authenticated copy of the South Carolina Judgment to their Notice of Filing of Foreign Judgment. *See Lust*, 110 N.C. App. at 301, 429 S.E.2d at 437 (citations omitted). Therefore, in order to rebut this presumption, Defendants were required to establish one of the defenses under N.C. Gen. Stat. § 1C-1705(a).

Here, Defendants argue the South Carolina Judgment is not enforceable because (A) it "was procured by extrinsic fraud and in violation of their due process rights" and (B) it violates the public policy of North Carolina contending the Settlement Agreement effectively constitutes a deficiency judgment on a purchase-money mortgage in violation of N.C. Gen. Stat. § 45-21.38. Specifically, Defendants assert the South Carolina Judgment involves a deficiency judgment from the foreclosure of property in South Carolina and therefore violates North Carolina's prohibition on deficiency judgments arising from a purchase-money mortgage. *See* N.C. Gen. Stat. § 45-21.38.

### A. Extrinsic Fraud

Our Court has explained:

> Although extrinsic fraud is a defense to an action to recover on a foreign judgment, intrinsic fraud is not. "Extrinsic fraud" is fraud which occurs in the procurement of the judgment; intrinsic fraud arises in the proceeding itself and concerns some matter necessarily under the consideration of the foreign court in deciding the merits. Where a party has had proper notice of the foreign action and the alleged fraud did not prevent his full participation in the action, any fraud is intrinsic.

*Satterfield*, 90 N.C. App. at 107-08, 367 S.E.2d at 360 (citations omitted); *see also Stokley v. Stokley*, 30 N.C. App. 351, 354, 227 S.E.2d 131, 134 (1976) ("Fraud is extrinsic when it deprives the unsuccessful party of an opportunity to present his case to the court.").

Here, Defendants argue the South Carolina Judgment should not be enforced "because it is the product of a process that produced a result that, while not necessarily directly procured by extrinsic fraud, but indirectly procured by a process whereby [Defendants] were not allowed to be heard on what was the essence of their claim." Specifically, Defendants contend Plaintiffs' action in the Court of Common Pleas seeking enforcement of the Settlement Agreement should have been governed by North Carolina law in accordance with the Notes' Choice-of-Law Clause but instead Defendants were told by "the attorneys, the mediator and even the courts that North Carolina Law would not apply[.]" Accordingly, it is this failure to consider North Carolina law, and specifically North Carolina's anti-deficiency statute, in enforcing the Settlement Agreement that Defendants contend constitutes extrinsic fraud.

Defendants' allegations, however, sound in intrinsic rather than extrinsic fraud. Defendants were never prevented from arguing North Carolina law or that our anti-deficiency statute applied. In fact, Defendants argued before both the Court of Common Pleas and the South Carolina Court of Appeals that the North Carolina anti-deficiency statute precluded enforcement of the Settlement Agreement; however, both Courts concluded this statute was immaterial as the Plaintiffs' motion to compel "pertain[ed] only to enforcement of a voluntary *settlement agreement* made in accordance with applicable South Carolina rules and case law." (emphasis added).

Thus, whether the Court of Common Pleas's and the South Carolina Court of Appeals's failure to consider our state's anti-deficiency statute constituted any type of fraud, it would be *intrinsic* as it "[arose] in the proceeding itself and concern[ed] some matter necessarily under the consideration of the foreign court in deciding the merits." *Satterfield*, 90 N.C. App. at 107, 367 S.E.2d at 360 (citations omitted). However, "intrinsic fraud is not" a defense to an action to recover on a foreign judgment. *Id.* (citation omitted). Further, Defendants have not alleged, and on this Record cannot allege, any acts constituting *extrinsic* fraud because Defendants were given "an opportunity to present [their] case to the court."[5] *Stokley*, 30 N.C. App. at 354, 227 S.E.2d at 134.

*B. Public Policy*

N.C. Gen. Stat. § 1C-1708 provides, "The provisions of this Article shall not apply to foreign judgments based on claims which are contrary to the public policies of North Carolina." N.C. Gen. Stat. § 1C-1708. However, our Court has previously recognized, "it is rare that we will disregard a sister state judgment on public policy grounds. The *Fauntleroy* [*v. Lum*, 210 U.S. 230, 52 L. Ed. 1039 (1908),] decision . . . narrows almost to the vanishing point the area of state public policy relief from the

---

[5] To the extent Defendants' argument suggests their own attorney's failure to advise them of our anti-deficiency statute constituted extrinsic fraud, *Satterfield* forecloses this argument— "Allegations that the defendant's attorney in the foreign state . . . *failed to protect his interests* are claims of intrinsic fraud and must be directly attacked in that state." 90 N.C. App. at 108-09, 367 S.E.2d at 361 (emphasis added) (citations omitted).

mandate of the Full Faith and Credit Clause—at least so far as the judgments of sister states are concerned." *FMS Management Systems v. Thomas*, 65 N.C. App. 561, 563, 309 S.E.2d 697, 699 (1983) (citation and quotation marks omitted), *aff'd per curiam*, 310 N.C. 742, 314 S.E.2d 545-46 (1984). Our courts have recognized public-policy exceptions to the Full Faith and Credit Clause only in very limited situations.

> One exception to the full faith and credit rule is a penal judgment; a state need not enforce the penal judgment of another state. Another exception is when the judgment sought to be enforced is against the public policy of the state where it was initially rendered. The exceptions, however, are few and far between. In general, we are bound by the Full Faith and Credit Clause to recognize and enforce a valid judgment for the payment of money rendered in a sister state.

*Id.* at 563-64, 309 S.E.2d at 699-700 (citations omitted); *see also Maxwell Schuman & Co. v. Edwards*, 191 N.C. App. 356, 361, 663 S.E.2d 329, 333 (2008) (holding a judgment based in part on a contingency fee in a child-custody action is not entitled to full faith and credit because contingency-fee arrangements in a child-custody action are strictly prohibited in North Carolina as against public policy); *but see MGM Desert Inn v. Holz*, 104 N.C. App. 717, 723-24, 411 S.E.2d 399, 402-03 (1991) (holding there is no exception to the Full Faith and Credit Clause that would prohibit enforcement of a Nevada judgment predicated on gambling debts in North Carolina, notwithstanding the fact gambling debts are generally unenforceable in North Carolina).

Here, Defendants assert N.C. Gen. Stat. § 45-21.38, which "abolishes deficiency judgments in purchase money transactions if foreclosure on the security yields an insufficient amount to satisfy the indebtedness," represents a public policy of North Carolina so strong that we should not give full faith and credit to the South Carolina Judgment. *Thomas*, 65 N.C. App. at 562, 309 S.E.2d at 699; *see also* N.C. Gen. Stat. § 45-21.38. We disagree.

First, as the Court of Common Pleas and the South Carolina Court of Appeals recognized, the Settlement Agreement, which the South Carolina Judgment upheld and enforced, is not a deficiency judgment on the Notes. Rather, the Settlement Agreement is what its name implies—a voluntary agreement between the parties to settle all then-pending claims in the Court of Common Pleas regarding Defendants' default under the Notes. Although this Agreement recognized Plaintiffs had the right to seek a deficiency judgment, this was, *inter alia*, in consideration for Plaintiffs paying the outstanding real estate taxes and for entering into the Agreement to prevent further litigation. More importantly, though, the South Carolina Judgment—which was affirmed by the South Carolina Court of Appeals—concluded the Settlement Agreement was "not ambiguous; nor was the [A]greement the a [sic] product of any fraud. The [A]greement was reduced to writing and signed by all parties and their counsel as required by Rule 43(k)" of the South Carolina Rules of Civil Procedure. Because the Court of Common Pleas and the South Carolina Court

of Appeals concluded the South Carolina Judgment was a valid final judgment under South Carolina law, this Judgment is entitled to full faith and credit in our courts. *See DocRx, Inc.*, 367 N.C. at 378, 758 S.E.2d at 395 ("[I]f the foreign judgment is valid and final in the rendering state, it is conclusive in the forum state and is entitled to receive full faith and credit." (citation omitted)).

Second, even assuming *arguendo* the South Carolina Judgment represents a deficiency judgment in violation of N.C. Gen. Stat. § 45-21.38, *Thomas* nevertheless dictates we must still recognize the South Carolina Judgment. *See* 65 N.C. App. at 563-64, 309 S.E.2d at 699-700 (citations omitted). This is so because our state's public policy of abolishing deficiency judgments is not one of the "rare" circumstances where "we will disregard a sister state judgment on public policy grounds." *Id.* at 563, 309 S.E.2d at 699.

In *Thomas*, the plaintiff obtained a deficiency judgment in Florida against the defendant and sought to enforce this judgment in a North Carolina court. *Id.* at 562, 309 S.E.2d at 699. The defendant contended the Florida judgment was not entitled to full faith and credit since it violated the public policy of our state against deficiency judgments. *Id.* at 563, 309 S.E.2d at 699. Our Court disagreed and held the plaintiff's deficiency judgment from Florida was entitled to full faith and credit in our state courts. *Id.* at 564, 309 S.E.2d at 700. The *Thomas* Court focused on the validity of the Florida judgment and concluded the judgment was entitled to full faith and credit

because it was "valid and enforceable in Florida[.]" *Id.*; *see also DocRx, Inc.*, 367 N.C. at 375, 758 S.E.2d at 393 ("[T]he test for determining when the Full Faith and Credit Clause requires enforcement of a foreign judgment focuses on the validity and finality of the judgment in the rendering state." (citations omitted)).

Thus, in this case, even assuming the South Carolina Judgment constitutes a deficiency judgment, our anti-deficiency statute does not constitute one of the "rare" exceptions to the Full Faith and Credit Clause. *See Thomas*, 65 N.C. App. at 563, 309 S.E.2d at 699. Therefore, the South Carolina Judgment is a valid final judgment from our sister state and entitled to full faith and credit in our courts. *See DocRx, Inc.*, 367 N.C. at 375, 758 S.E.2d at 393 (citations omitted). Consequently, the trial court did not err by entering its Enforcement Order giving full faith and credit to the South Carolina Judgment and decreeing the South Carolina Judgment enforceable in North Carolina.

## **Conclusion**

Accordingly, for the foregoing reasons, we affirm the trial court's Enforcement Order.

AFFIRMED.

Judges STROUD and DIETZ concur.