DAVIS, Judge.
 

 *661
 

 *499
 
 The Full Faith and Credit Clause of the United States Constitution provides that a judgment entered in one state must be given the same effect in another state that it possesses in the state where it was rendered. A foreign judgment must, however, meet the criteria for a valid judgment under the laws of the rendering state - including the requirement of proper service of process upon the defendant - before it will be afforded full faith and credit.
 

 Defendant Walid Essa appeals from an order in which the trial court found that a default judgment rendered against him in Pennsylvania was entitled to full faith and credit in North Carolina. Because we conclude that Essa was never properly served with process under Pennsylvania law and lacked a full and fair opportunity to litigate the action in Pennsylvania, we reverse.
 

 Factual and Procedural Background
 

 On 19 February 2011, Essa, who operates a restaurant called The Dugout in Archdale, North Carolina, entered into an equipment lease contract (the "Lease") with Trinity Data Systems ("Trinity"). The Lease provided that Trinity was to install a point-of-sale system at The Dugout. The terms and conditions of the Lease provided that it was to be governed by the laws of Pennsylvania, any lawsuit arising out of the Lease would be brought in Pennsylvania, and Essa would be subject to jurisdiction in Pennsylvania. Trinity subsequently assigned the Lease to Marlin Leasing Corporation ("Marlin").
 

 On 18 April 2013, Marlin filed a complaint against Essa in municipal court in Philadelphia, Pennsylvania. In its complaint, Marlin alleged that Essa was in default under the Lease and claimed damages of $8,562.75. On 15 August 2014, Marlin filed with the municipal court a document captioned "Affidavit of Service by Mail" in which counsel for Marlin stated that (1) he "sent a certified letter (return receipt requested) to the defendant and the receipt was returned marked either 'UNCLAIMED' or 'REFUSED' "; (2) he then sent a letter by regular mail to Essa at the same address where the original certified letter had been mailed, which was
 
 *500
 
 2104 Francis St., High Point, NC 27263 (the "High Point Address"); and (3) the letter was never returned to him despite the fact that his return address was listed thereon.
 
 [1]
 
 In fact, the letter sent by certified mail had been returned to Marlin with the notation that it had been "unclaimed."
 

 A hearing was held in municipal court for which Essa was not present. A default judgment (the "Pennsylvania Judgment") was entered by the court on 3 September 2014. On 20 January 2015, Marlin filed a complaint in Wake County District Court in which it asserted that the Pennsylvania Judgment was entitled to full faith and credit in North Carolina and requested that the judgment be enforced. Essa filed an answer on 7 July 2017 in which he argued that the Pennsylvania Judgment was not entitled to full faith and credit due, in part, to the fact that Essa had not received notice of the Pennsylvania action.
 

 On 3 January 2018, Marlin filed a motion for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure along with a supporting affidavit from Karen Shields, Vice President and Deputy General Counsel for Marlin. The affidavit stated, in pertinent part, as follows:
 

 Service on the Defendant was made in accordance with 231 Pa. Code Rule 403(1) by mailing the documents by ordinary mail via U.S. Postal Service and by U.S. Postal Service, Certified Mail, Return Receipt Requested as evidenced by the Affidavit of Service. Defendant refused to accept service by certified mail sent to 2104 Francis Street, High Point, NC 27263 and therefore Plainitf [sic] mailed a copy of the Relisted Pennsylvania Suit to the same address which was not returned to Marlin by the U.S. Postal Service.
 
 [2]
 

 *662
 
 Essa filed a cross-motion for summary judgment supported by his own affidavit on or about 5 January 2018. Essa's affidavit stated, in pertinent part, as follows:
 

 4. I am the owner of The Dugout restaurant located at 11246 N. Main St., Archdale, NC 27263....
 

 *501
 
 5. The Dugout has been continuously located at the address stated in the preceding paragraph since prior to February 2011.
 

 6. I was not served with a copy of a Summons and Complaint in the Commonwealth of Pennsylvania, Philadelphia Municipal Court, First Judicial District of Pennsylvania, Case No. SC-13-04-18-4746 (the "Pennsylvania Action").
 

 7. I did not refuse service of a copy of a Summons and Complaint in the Pennsylvania Action.
 

 8. Prior to the commencement of this civil action, I had no knowledge of the Pennsylvania Action.
 

 A hearing was held on both motions in Wake County District Court on 22 February 2018 before the Honorable Ned W. Mangum. On 27 February 2018, the trial court issued an order granting Marlin's motion for summary judgment and denying Essa's cross-motion. In the order, the court stated that "the Plaintiff's Pennsylvania judgment against the Defendant is entitled to full faith and credit in the State of North Carolina and ... the Defendant had a full and fair opportunity to litigate any issues regarding jurisdiction in the Commonwealth of Pennsylvania." Essa filed a timely notice of appeal with this Court.
 

 Analysis
 

 Essa contends that the trial court erred in granting summary judgment in favor of Marlin because the Pennsylvania Judgment is not entitled to full faith and credit in North Carolina in that it was entered despite the lack of valid service of process upon Essa. We agree.
 

 "On an appeal from an order granting summary judgment, this Court reviews the trial court's decision
 
 de novo
 
 ."
 
 Mitchell, Brewer, Richardson, Adams, Burge & Boughman v. Brewer
 
 , --- N.C. App. ----, ----,
 
 803 S.E.2d 433
 
 , 443 (2017) (citation and quotation marks omitted),
 
 disc. review denied
 
 ,
 
 370 N.C. 693
 
 ,
 
 811 S.E.2d 161
 
 (2018). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."
 
 Premier, Inc. v. Peterson,
 

 232 N.C. App. 601
 
 , 605,
 
 755 S.E.2d 56
 
 , 59 (2014) (citation and quotation marks omitted).
 

 It is well established that "[t]he moving party has the burden of demonstrating the lack of any triable issue of fact and entitlement to
 
 *502
 
 judgment as a matter of law. The evidence produced by the parties is viewed in the light most favorable to the non-moving party."
 
 Hardin v. KCS Int'l, Inc.,
 

 199 N.C. App. 687
 
 , 695,
 
 682 S.E.2d 726
 
 , 733 (2009) (internal citations omitted). We have held that "[a]n issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense."
 
 In re Alessandrini
 
 ,
 
 239 N.C. App. 313
 
 , 315,
 
 769 S.E.2d 214
 
 , 216 (2015) (citation omitted).
 

 This Court has recently summarized the effect of the Full Faith and Credit Clause:
 

 The Full Faith and Credit Clause requires that the judgment of the court of one state must be given the same effect in a sister state that it has in the state where it was rendered. Because a foreign state's judgment is entitled to only the same validity and effect in a sister state as it had in the rendering state, the foreign judgment must satisfy the requisites of a valid judgment under the laws of the rendering state before it will be afforded full faith and credit.
 

 Tropic Leisure Corp. v. Hailey
 
 , --- N.C. App. ----, ----,
 
 796 S.E.2d 129
 
 , 131 (internal citations, quotation marks, and brackets omitted),
 
 appeal dismissed and disc. review denied,
 

 369 N.C. 754
 
 ,
 
 799 S.E.2d 868
 
 ,
 
 cert. denied
 
 , --- U.S. ----,
 
 199 L.Ed. 2d 385
 
 (2017). We review
 
 de novo
 
 the issue of whether a trial court has properly extended
 
 *663
 
 full faith and credit to a foreign judgment.
 

 Id.
 

 "[T]he test for determining when the Full Faith and Credit Clause requires enforcement of a foreign judgment focuses on the validity and finality of the judgment in the rendering state."
 
 DocRx, Inc. v. EMI Servs. of N.C.
 
 ,
 
 367 N.C. 371
 
 , 375,
 
 758 S.E.2d 390
 
 , 393 (citation omitted),
 
 cert. denied
 
 , --- U.S. ----,
 
 135 S.Ct. 678
 
 ,
 
 190 L.Ed. 2d 390
 
 (2014). Our Supreme Court has made clear that North Carolina courts will not enforce foreign judgments in circumstances where "the rendering state lacked personal or subject matter jurisdiction."
 
 Id.
 
 at 382,
 
 758 S.E.2d at 397
 
 .
 
 [3]
 

 *503
 
 In addressing this issue, we find instructive our Supreme Court's decision in
 
 Boyles v. Boyles,
 

 308 N.C. 488
 
 ,
 
 302 S.E.2d 790
 
 (1983), in which the Court determined that a default judgment rendered by a federal court applying Florida law was not entitled to full faith and credit because the defendant was not given proper notice of the action.
 
 Id.
 
 at 489,
 
 302 S.E.2d at 792
 
 .
 
 Boyles
 
 concerned a claim to recover alimony arrearages by the plaintiff from her ex-husband.
 

 Id.
 

 The plaintiff attempted to serve the defendant by certified mail, which was returned "bear[ing] a postal stamp indicating ... that the letter was 'unclaimed.' "
 

 Id.
 

 Subsequently, "two notices were left at [the defendant's] Pennsylvania address informing him that the post office had the letter."
 

 Id.
 

 A hearing was held in a Florida circuit court that the defendant did not attend.
 

 Id.
 

 The circuit court granted a default judgment in favor of the plaintiff, finding that service upon the defendant had been proper under Florida law.
 

 Id.
 

 Ten years later, the plaintiff filed a complaint in Wake County Superior Court, "asking that full faith and credit be accorded to the Florida default judgment."
 
 Id.
 
 at 490,
 
 302 S.E.2d at 792
 
 . The defendant, who had become a resident of North Carolina, argued that the default judgment was not entitled to full faith and credit because of insufficient notice with regard to the Florida action.
 

 Id.
 

 The defendant filed an affidavit in which he "specifically denied he was ever aware" of the Florida default judgment and stated that he had never "been served with a complaint for [the] alimony arrearages while living in Pennsylvania."
 

 Id.
 

 In determining whether the default judgment was entitled to full faith and credit, our Supreme Court looked to Florida law governing service of process, which provided that notice sent by mail was sufficient "only if the affected party received actual notice or there was affirmative evidence that he or she had refused the notice."
 
 Id.
 
 at 496,
 
 302 S.E.2d at 796
 
 . The Supreme Court concluded that the evidence of the plaintiff's attempts to serve the defendant (which included a receipt indicating that the letter had been "unclaimed" and notations that two notices had been left at the defendant's address) was not sufficient to support an inference that the defendant had actual notice "in light of [his] assertion that he was never aware of the Florida proceeding."
 
 Id.
 
 at 498,
 
 302 S.E.2d at 797
 
 .
 

 Although
 
 Boyles
 
 applied Florida law rather than Pennsylvania law, it is nevertheless helpful in guiding our analysis of the similar issue presented in the case currently before us. Like the defendant in
 
 Boyles
 
 , Essa argues the Pennsylvania municipal court that entered the default judgment lacked jurisdiction over him because he was not properly served under Pennsylvania law. He further asserts that he never received
 
 *504
 
 notice of the Pennsylvania Judgment until the North Carolina lawsuit was filed by Marlin. Therefore, in order to analyze Essa's arguments we must first examine Pennsylvania law to determine whether he was properly served with process under the laws of that jurisdiction.
 

 I. Service of Process under Pennsylvania Rules of Civil Procedure
 

 As an initial matter, we note that the Pennsylvania Supreme Court has explained
 
 *664
 
 the jurisdictional significance of service of process as follows:
 

 Service of process is a mechanism by which a court obtains jurisdiction of a defendant, and therefore, the rules concerning service of process must be strictly followed. Without valid service, a court lacks personal jurisdiction of a defendant and is powerless to enter a judgment against him or her. Thus, improper service is not merely a procedural defect that can be ignored when a defendant subsequently learns of the action against him or her.
 

 Cintas
 
 , 549 Pa. at 91, 700 A.2d at 917-18 (internal citations omitted). Thus, under Pennsylvania law, "[i]f there is no valid service of initial process, a subsequent judgment by default must be deemed defective."
 
 U.K. LaSalle, Inc. v. Lawless
 
 ,
 
 421 Pa. Super. 496
 
 , 500,
 
 618 A.2d 447
 
 , 449 (1992).
 

 Rule 404 of the Pennsylvania Rules of Civil Procedure governs service of process upon persons outside of Pennsylvania, stating that "[o]riginal process shall be served outside the Commonwealth within ninety days of the issuance of the writ or the filing of the complaint or the reissuance or the reinstatement thereof." Pa. R.C.P. No. 404. Rule 404 further provides that process may be served "by mail in the manner provided by Rule 403." Pa. R.C.P. No. 404(2). Rule 403, in turn, states as follows:
 

 If a rule of civil procedure authorizes original process to be served by mail, a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent. Service is complete upon the delivery of the mail.
 

 (1) If the mail is returned with notation by postal authorities that the defendant
 
 refused
 
 to accept the mail, the plaintiff shall have the right of service by mailing a copy to the defendant at the same address by ordinary mail with the return address of the sender appearing thereon. Service by ordinary mail
 
 *505
 
 is complete if the mail is not returned to the sender within fifteen days of mailing.
 

 (2) If the mail is returned with notation by the postal authorities that it was
 
 unclaimed
 
 , the plaintiff shall make service by another means pursuant to these rules.
 

 Pa. R.C.P. No. 403 (emphasis added).
 

 Courts applying Pennsylvania law have consistently differentiated between the terms "refused" and "unclaimed" in this context.
 
 See
 

 Kucher v. Fischer
 
 ,
 
 167 F.R.D. 397
 
 , 398 (E.D. Pa. 1996) (distinguishing between notations "refused" and "unclaimed" for purposes of Rule 403 );
 
 Carson v. Carson
 
 ,
 
 28 Pa. D. & C.3d 281
 
 , 283 (1983) ("[I]t seems clear that 'unclaimed' is not the same as 'refused.' ");
 
 Harris v. Kaulius
 
 ,
 
 18 Pa. D. & C.3d 636
 
 , 639 (1981) ("[A] serious question of due process [will arise where a] plaintiff produce[s] nothing except proof that the letter [went] unclaimed[.]").
 

 In
 
 Kucher
 
 , the plaintiff filed a complaint against the defendants in an effort to recover damages for injuries she received in a car accident.
 
 Kucher
 
 ,
 
 167 F.R.D. at 397
 
 . After the defendants failed to make an appearance, the plaintiff sought a default judgment in which she claimed that the defendants had been properly served with process under Pennsylvania law.
 

 Id.
 

 In support of this motion, the plaintiff asserted that (1) after a copy of the complaint was sent by certified mail to the defendants' address, it was returned to the plaintiff with the notation "unclaimed;" and (2) the plaintiff had subsequently sent additional copies of the complaint "by regular first class mail," which were not returned.
 

 Id.
 

 In denying the plaintiff's motion for a default judgment, the court applied Rule 403 as follows:
 

 Pennsylvania law authorizes service by ordinary mail upon satisfaction of the following steps: (1) the mailing of the original process to the defendant by a form of mail requiring a receipt, such as certified or registered mail; (2) the return of that mail impressed with a notation by the postal authorities that the mail had been "refused"; and (3) the re-mailing of the "refused" mail to the defendant by ordinary mail.
 

 Here, plaintiff has established that steps 1 and 3 have been fulfilled, i.e., that process was mailed to defendant initially by certified
 
 *665
 
 mail and later by ordinary mail. However, because the certified letters returned by the
 
 *506
 
 postal authorities contain notations impressed upon them indicating that the mail went "unclaimed" rather than that it was "refused," plaintiff has failed to demonstrate satisfaction of step 2.
 

 A notation by the postal authorities that certified or registered mail went "unclaimed" rather than "refused" is generally insufficient to satisfy the requirements of service by ordinary mail under Pennsylvania law. Similarly, certified or registered mail that is returned because the intended recipient has moved can not be said to have been deliberately refused.
 

 The importance of the distinction between "refused" and "unclaimed" mail reflects the common sense notion that a defendant's failure to claim mail may stem from a multitude of reasons, including that the defendant has moved to a new address. Unlike a refusal, which is intentional, a failure to claim does not alone give rise to the implication that the defendant has deliberately sought to avoid receipt of process.
 

 Id.
 

 at 397-98
 
 (internal citations and quotation marks omitted).
 

 Like the plaintiff in
 
 Kucher
 
 , Marlin has failed to satisfy the second step under Rule 403. Despite the statement in the affidavit filed by Marlin asserting that the certified mail receipt sent to Essa came back bearing the notation "refused," the record before us makes unmistakably clear that the certified letter was instead returned with the notation "unclaimed." Thus, based on unambiguous Pennsylvania law, we conclude that Marlin failed to properly serve Essa under Rule 403.
 

 Marlin contends, however, that even assuming service was improper under Rule 403, service was effectuated "pursuant to the controlling local rules of the Philadelphia Municipal Court, Civil Division, which rendered the judgment in the Pennsylvania Action." In support of this argument, Marlin cites Local Rule 111.C which states, in pertinent part, as follows:
 

 (1) A complaint may be served by certified mail if defendant's last known address is ... outside the County of Philadelphia ....
 

 (2) If the certified mail is returned with notation by the postal authorities that it was
 
 refused or unclaimed
 
 , the plaintiff shall have the right of service by mailing a copy to the defendant at the same address by first class mail with
 
 *507
 
 the return address of sender appearing thereon. Service by ordinary mail is complete if the mail is not returned to sender within 15 days after mailing.
 

 Phila. M.C.R. Civ.P. No. 111.C (emphasis added).
 

 Thus, while Rule 403 materially differentiates between a notation of "unclaimed" on a certified mail receipt as opposed to a notation of "refused," no such distinction exists under Local Rule 111.C. Therefore, if - as Marlin argues - Local Rule 111.C applies on these facts, service upon Essa was proper under Pennsylvania law based on the fact that the letter Marlin subsequently sent to Essa by regular mail was not returned within fifteen days. Conversely, if Essa is correct that Rule 403 governs, then no proper service was made.
 

 In resolving this conflict, we are guided by Pennsylvania Rule of Civil Procedure 239, which provides that "[l]ocal rules shall not be inconsistent with any general rule of the Supreme Court or any Act of Assembly." Pa. R.C.P. 239(b)(1).
 
 See also
 

 Sanders v. Allegheny Hosp. - Parkview Div.
 
 ,
 
 2003 PA Super 349
 
 ,
 
 833 A.2d 179
 
 , 183 (Pa. Super. 2003) ("Local courts have the power to formulate their own rules of practice and procedure. These rules have equal weight to those rules established by the Pennsylvania Supreme Court
 
 provided that the local rules do not abridge, enlarge, or modify the substantive rights of a party
 
 ." (internal citation and quotation marks omitted, emphasis added) ).
 

 We believe that Local Rule 111.C is facially inconsistent with Rules 404 and 403 with regard to non-resident defendants such as Essa in that its application would diminish their rights to adequate service of process. As noted above, Rule 404 specifically cross-references Rule 403 and expressly states that with regard to defendants outside of Pennsylvania service pursuant to Rule 403 is appropriate.
 

 *666
 
 Pa. R.C.P. No. 404(2). Rule 403, in turn, provides that service may be made by regular mail
 
 only
 
 in cases where a letter previously sent by certified mail has been returned as "refused" and that, conversely, "if the mail is returned with notation by the postal authorities that it was unclaimed, the plaintiff shall make service by another means pursuant to
 
 these
 
 rules" - not pursuant to rules established by local courts. Pa. R.C.P. No. 403(1), (2) (emphasis added).
 
 See
 

 In re Elfman
 
 ,
 
 212 Pa. Super. 164
 
 , 167,
 
 240 A.2d 395
 
 , 396 (Pa. Super. 1968) ("When notice in a specified manner is prescribed by a statute, that method is exclusive.").
 

 Thus, whatever applicability Local Rule 111.C may have with regard to service upon local defendants, we are unable to agree with Marlin that it applies to non-resident defendants such as Essa.
 
 See, e.g.
 
 ,
 
 Baez v. Rivers
 
 , 2007 Phila. Ct. Com. Pl. LEXIS 21, *6 (applying Rules 403 and
 
 *508
 
 404 to service on out-of-state defendant).
 
 [4]
 
 Accordingly, we conclude that Essa was never properly served with process under Pennsylvania law.
 

 II. Full and Fair Opportunity to Litigate
 

 Finally, we address Marlin's argument that the Pennsylvania Judgment should be deemed enforceable in North Carolina even if service was not proper under Pennsylvania law on the theory that Essa nevertheless had a full and fair opportunity to litigate the service of process issue in Pennsylvania yet essentially waived that right.
 
 [5]
 
 However, as Marlin concedes, this principle would apply
 
 only if
 
 Essa had actually received notice of the Pennsylvania action in which the judgment sought to be enforced was rendered.
 
 See
 

 Boyles
 
 ,
 
 308 N.C. at 491-92
 
 ,
 
 302 S.E.2d at 793
 
 (An inquiry into whether a "jurisdictional issue was 'fully and fairly litigated' ... rests on the presupposition that the requirement of adequate notice had been met in the original proceeding. Indeed, if a litigant has no notice of a court proceeding,
 
 a fortiori
 
 , the litigant could not 'fully and fairly' litigate
 
 any
 
 issue in the case.").
 
 [6]
 

 As noted above, Essa submitted an affidavit in support of his motion for summary judgment in which he stated that he was wholly unaware of the existence of the Pennsylvania action until he was served with process in the North Carolina action. Marlin makes several arguments in its brief as to why an inference can be drawn that Essa
 
 may
 
 have been aware of the Pennsylvania action prior to the entry of the Pennsylvania Judgment, but as Marlin's counsel conceded at oral argument nothing in the record affirmatively demonstrates that Essa possessed actual knowledge of the Pennsylvania lawsuit.
 

 First, in support of its contention that Essa had actual notice of the Pennsylvania action Marlin has requested that we take judicial notice of a deed - a copy of which is attached to Marlin's brief - naming Essa
 
 *509
 
 as the grantee of the property located at the High Point Address. It is true that "this Court can take judicial notice of certain documents even though they were not included in the record on appeal" and that we have previously taken judicial notice of information contained within recorded deeds.
 
 In re Hackley,
 

 212 N.C. App. 596
 
 , 601-02,
 
 713 S.E.2d 119
 
 , 123 (judicially noting a conveyance of property reflected on a recorded deed attached to a party's brief),
 
 disc. review denied
 
 ,
 
 365 N.C. 351
 
 ,
 
 718 S.E.2d 376
 
 (2011).
 
 *667
 
 The mere fact, however, that Essa may own the property listed at the High Point Address is by itself insufficient to show that Essa had actual notice of the Pennsylvania Action. Thus, the existence of the deed - without more - is not sufficient to rebut Essa's sworn affidavit denying any prior knowledge of the Pennsylvania Action.
 

 Second, Marlin contends that a 2 July 2013 entry on the docket sheet for the Pennsylvania Action raises an inference that Essa had actual notice of the Pennsylvania Action. This entry states that the "case was amended to add as [defendant] Walid Essa at 11246 N. Main St. Ste 304, Archdale, N.C. 27263" - the address of The Dugout. Although Marlin contends this docket entry suggests that a "Statement of Claim" in connection with the Pennsylvania Action was, in fact, mailed to The Dugout, the record before us contains no indication that any documents were actually mailed to that address. Therefore, it would be pure speculation for us to assume that Essa had actual notice of the Pennsylvania Action, and such conjecture is insufficient to rebut Essa's sworn statement to the contrary.
 

 * * *
 

 Thus, because Marlin failed to properly serve Essa with process under Pennsylvania law and has not shown that Essa had a full and fair opportunity to litigate in Pennsylvania the jurisdictional issue resulting from the lack of service, we hold that the trial court erred in granting summary judgment in favor of Marlin and in denying Essa's cross-motion.
 
 See
 

 Boyles
 
 ,
 
 308 N.C. at 497
 
 ,
 
 302 S.E.2d at 796-97
 
 (declining to extend full faith and credit to Florida judgment where plaintiff did not follow Florida service requirements and evidence did not support finding of actual notice).
 

 Conclusion
 

 For the reasons stated above, we reverse the trial court's 27 February 2018 order and remand for entry of an order granting summary judgment in favor of Essa.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 Judges HUNTER, JR. and BERGER concur.
 

 [1]
 

 While it is not entirely clear from the affidavit, it appears that a copy of the complaint was included with the letter sent to Essa.
 

 [2]
 

 As discussed in more detail below, the assertion in this affidavit that the letter sent by certified mail had been "refused" was incorrect. Instead, the receipt for the letter had been marked "unclaimed."
 

 [3]
 

 Improper service of process results in a lack of personal jurisdiction under both North Carolina and Pennsylvania law.
 
 See
 

 Fender v. Deaton
 
 ,
 
 130 N.C. App. 657
 
 , 659,
 
 503 S.E.2d 707
 
 , 708 (1998) ("[I]t is well established that a court may only obtain personal jurisdiction over a defendant by the issuance of summons and service of process by one of the statutorily specified methods."),
 
 disc. review denied
 
 ,
 
 350 N.C. 94
 
 ,
 
 527 S.E.2d 666
 
 (1999) ;
 
 Cintas Corp. v. Lee's Cleaning Servs.
 
 ,
 
 549 Pa. 84
 
 , 91,
 
 700 A.2d 915
 
 , 917 (1997) ("Service of process is a mechanism by which a court obtains jurisdiction over a defendant[.]").
 

 [4]
 

 While Marlin cites
 
 Leight v. Lefkowitz
 
 ,
 
 419 Pa. Super. 502
 
 ,
 
 615 A.2d 751
 
 (Pa. Super. 1992), to support its argument that Pennsylvania courts do, in fact, apply Local Rule 111.C, its reliance on that case is misplaced.
 
 Leight
 
 involved Pennsylvania defendants rather than an out-of-state defendant such as Essa.
 

 Id.
 

 at 507
 
 ,
 
 615 A.2d at 753
 
 . Therefore, we do not find
 
 Leight
 
 to be applicable to the present case.
 

 [5]
 

 This appears to be the ground underlying Judge Mangum's 27 February 2018 order granting summary judgment in favor of Marlin.
 

 [6]
 

 As noted above, Pennsylvania caselaw - while not entirely clear on the issue - seems to suggest that even actual notice is not enough to remedy the effects of improper service.
 
 See
 

 U.K.
 

 LaSalle
 
 ,
 
 421 Pa. Super. at 500
 
 ,
 
 618 A.2d at 449
 
 . In any event, for the reasons set out herein the question of whether actual notice could ever be sufficient under Pennsylvania law to excuse improper service is moot because Marlin has failed to rebut Essa's evidence that he
 
 lacked
 
 actual notice of the Pennsylvania Judgment until the North Carolina lawsuit was filed.