MURPHY, Judge.
 

 *290
 
 The New Hanover County District Court ("the District Court") did not err in asserting jurisdiction over the adoption of two "Indian children," K.L.J. and K.P.J., subject to the federal Indian Child Welfare Act ("ICWA"). Additionally, the District Court did not err in electing not to give full faith and credit to the Cheyenne River Sioux Tribal Court's ("Tribal Court") determination that Appellant is an "Indian Custodian," as defined by ICWA, entitled to the return of the two children. We affirm the District Court's
 
 Order and Judgment
 
 .
 

 BACKGROUND
 

 This is an appeal from the District Court's
 
 Order and Judgment
 
 entering Decrees of Adoption declaring both K.L.J. and K.P.J. adopted by the Petitioners-Appellees. Both children were born in South Dakota-K.L.J. in 2006 and K.P.J. in 2009-to a father who is a member of the Cheyenne River Sioux Tribe and are, themselves, members of the same. Shortly after K.P.J. was born the Minnehaha Department of Social Services in Sioux Falls, South Dakota took custody of both children due to their parents' drug and alcohol abuse. K.L.J. and K.P.J.'s biological parents had their parental rights to the children terminated in 2011. Pursuant to ICWA, the Tribal Court assumed jurisdiction over the children's custody proceeding and placed them in the care of "paternal aunt, Jean Coffman," the Appellant in this matter, ordering the children's case closed and dismissed.
 

 About three months later, Appellant entered into a
 
 Temporary Guardianship Agreement
 
 in New Hanover County wherein both children were placed with Appellees, the Petitioners below, for six months or "as long as necessary, beginning on [17 January]
 

 *116
 
 2013." Subsequently, Appellees were appointed K.L.J. and K.P.J.'s legal guardians by the Clerk of Superior Court of New Hanover County ("the Clerk"). In November 2015, Appellees filed petitions in New Hanover County to adopt K.L.J. and K.P.J.
 

 Neither Appellant nor the Cheyenne River Sioux Tribe were served with the adoption petitions or given notice of the filings at the time they were made. However, two weeks after filing, Appellees served the Tribe with copies of the petitions by certified mail pursuant to an order of the
 
 *291
 
 Clerk. Part of this notice advised the Tribal Court that, if it wished "to participate [in the adoption proceedings, it was] required and directed to make defense of such pleadings by filing a response to the petition ... within thirty (30) days of the receipt [of] this notice in order to participate in and to receive further notice of the proceedings[.]" The Tribal Court did not take any action relating to the adoption proceeding within the thirty-day period.
 

 Two months after filing the adoption petitions, Appellees-at the request of the Clerk of Court-gave formal notice to Appellant, who then attempted to intervene in the adoption by requesting "the immediate return of the minor Indian Child[ren] to her physical custody pursuant to the Tribal Custody Order ...." Appellant also moved to vacate New Hanover's order appointing Appellees as guardians of K.L.J. and K.P.J. At a hearing before the Clerk in March 2016, Appellant's motion was denied, and the matter was transferred to District Court to resolve the issue of whether North Carolina has jurisdiction over the adoption. The hearing in District Court was held on 16 June 2016.
 

 Prior to the hearing in District Court, Appellant filed an ex parte motion with the Tribal Court on 2 May 2016, in which she asked it to assert jurisdiction over the adoption of K.L.J. and K.P.J. The record also includes what appears to be a faxed copy of what purports to be an
 
 Order of Jurisdiction
 
 issued by the Tribal Court in response to Appellant's 2 May 2016 motion wherein the Tribal Court asserts: (1) K.L.J. and K.P.J. are "Wards of the Cheyenne River Sioux Tribe until the age of 18 years;" (2) Appellant is the children's "Indian Custodian[;]" and (3) that it has "exclusive jurisdiction according to ICWA[.]" Both Appellant's motion and the faxed copy of the Tribal Court's
 
 Order of Jurisdiction
 
 are included in the Record as "Proposed Intervenor's Exhibits for June [16,] 2016 District Court hearing[.]" Neither was admitted into evidence during the 16 June 2016 hearing after Appellees objected to their admission.
 

 After hearing arguments from both parties, the District Court entered Findings of Fact and Conclusions of Law on the record and memorialized in an
 
 Order and Judgment
 
 filed 18 August 2016. In relevant part, the District Court concluded "[t]hat this Court has jurisdiction to enter orders with regards to the adoption," and ordered "[t]hat Decrees of Adoption are hereby entered as to [K.P.J.] and [K.L.J.]"
 

 ANALYSIS
 

 In light of our Supreme Court's 5 December 2018 order, the two issues before us are: (1) whether it was error for the District Court to assert jurisdiction over an adoption of "Indian children" covered by ICWA, and
 
 *292
 
 (2) whether the District Court erred in failing to give full faith and credit to the Tribal Court's purported 2016 determination that Appellant is an "Indian Custodian" of the children entitled to their return.
 

 "In reviewing a question of subject matter jurisdiction, our standard of review is
 
 de novo
 
 ."
 
 In re: K.A.D.
 
 ,
 
 187 N.C. App. 502
 
 , 503,
 
 653 S.E.2d 427
 
 , 428 (2007). Similarly, "We review
 
 de novo
 
 the issue of whether a trial court has properly extended full faith and credit to a foreign judgment."
 
 Marlin Leasing Corp. v. Essa
 
 , --- N.C. App. ----, ----,
 
 823 S.E.2d 659
 
 , 662-63 (2019) (citing
 
 Tropic Leisure Corp. v. Hailey
 
 ,
 
 251 N.C. App. 915
 
 , 917,
 
 796 S.E.2d 129
 
 , 131 (2017),
 
 appeal dismissed and disc. review denied
 
 ,
 
 369 N.C. 754
 
 ,
 
 799 S.E.2d 868
 
 ,
 
 cert. denied
 
 , --- U.S. ----,
 
 138 S.Ct. 505
 
 ,
 
 199 L. Ed. 2d 385
 
 (2017) ). After exhaustive review of the record, we affirm the District Court's
 
 Order and Judgment
 
 declaring K.L.J. and K.P.J. the adoptive children of the Appellees.
 

 *117
 

 A. Subject Matter Jurisdiction
 

 Appellant contends the District Court erred in asserting jurisdiction over an adoption of "Indian children" because the tribal court initially exercising jurisdiction continued to assert jurisdiction. However, the Tribal Court did not continue to assert jurisdiction so much as it re-asserted jurisdiction during the pendency of this action. Given our standard of review, we must determine de novo whether the District Court erred in concluding "grounds exist sufficient to give [the District Court] jurisdiction over this matter to enter an order approving the adoption of these children by the [Appellees]."
 

 In relevant part, ICWA establishes a tribal court will have exclusive jurisdiction:
 

 [A]s to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.
 

 25 U.S.C. § 1911
 
 (a) (2019). This provision grants tribal courts exclusive jurisdiction over child custody proceedings in three instances: (1) over an Indian child who resides within the reservation; (2) over an Indian child domiciled within the reservation; and (3) over an Indian child who is a ward of the tribal court. Here, the children did not reside on the reservation and were not domiciled therein at the time this matter arose, so the only way the Tribal Court could have exclusive jurisdiction over this
 
 *293
 
 matter is if the children were its wards. Based on the record, we cannot conclude the children were wards of the Tribal Court and hold the provisions of ICWA do not grant the Tribal Court exclusive jurisdiction over the adoption of K.L.J. and K.P.J.
 

 ICWA and the related sections of the Code of Federal Regulations do not instruct as to who should make a finding regarding a child's status as a tribal court's ward and North Carolina does not use the term "ward" in the context of adoptions.
 
 [1]
 
 Black's Law Dictionary defines a "ward" as "a person, usu[ally] a minor, who is under a guardian's charge or protection."
 
 Ward
 
 , BLACK'S LAW DICTIONARY (11th ed. 2019). More specifically, Black's defines "ward of the state" as "[s]omeone who is housed by, and receives protection and necessities from, the government."
 
 Ward of the State
 
 , BLACK'S LAW DICTIONARY (11th ed. 2019). For purposes of ICWA, we adopt this definition for the term "Tribal Court Ward." Applying this definition to the relevant provision of ICWA, once a child has stopped being housed by or provided protections and necessities from the tribe, she will cease being its ward for purposes of
 
 25 U.S.C. § 1911
 
 (a).
 

 In 2011, South Dakota DSS was granted full custody of the children. In 2012, the Tribe was granted renewed jurisdiction over the children's case and placed the children in the care of their "paternal aunt," Appellant. There is no evidence the children ever made the reservation their domicile or residence after that point in time, nor is there evidence the Tribe housed them or provided protections or necessities thereafter. In fact, the Appellant sought and obtained guardians for the children from the courts of North Carolina. Having lived most of their life outside the Tribe's reservation and without provision of protections and necessities therefrom, we hold K.L.J. and K.P.J. were not wards of the Tribal Court. The Tribal Court cannot assert exclusive jurisdiction over this matter under
 
 25 U.S.C. § 1911
 
 (a).
 

 Appellant's argument that the children are Tribal Court wards is based entirely upon the Tribal Court's
 
 Order of Jurisdiction
 
 . In an order purportedly entered two days prior to the District Court's adoption order, the Tribal Court concluded it had exclusive jurisdiction over the children as "Wards of the Cheyenne River Sioux Tribe until the age of 18 years[.]" Appellant argues the District Court disregarded that Order despite
 
 *118
 
 ICWA's mandate that our State's courts "shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian
 
 *294
 
 tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity."
 
 25 U.S.C. § 1911
 
 (d) (2019). However, as is described in greater detail below, the Order in question was not authenticated and there is nothing in the record to assure us of (1) its validity or (2) compliance with the Due Process Clause. The District Court did not err in asserting subject matter jurisdiction over the adoption of K.L.J. and K.P.J.
 

 B. Full Faith and Credit
 

 Under ICWA, every state "shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity."
 
 25 U.S.C. § 1911
 
 (d). The District Court seemingly disregarded the Tribal Court's purported 14 June 2016
 
 Order of Jurisdiction
 
 in reaching its decision in this matter and did not adopt the conclusions therein. Importantly, the Tribal Court concluded (1) K.L.J. and K.P.J. were wards of the tribal court and (2) Appellant was their "Indian Custodian," and therefore entitled to the children's return. The District Court concluded otherwise, and Appellant argues it erred in failing to give full faith and credit to the Tribal Court's
 
 Order of Jurisdiction
 
 .
 

 "We review
 
 de novo
 
 the issue of whether a trial court has properly extended full faith and credit to a foreign judgment."
 
 Marlin Leasing Corp.
 
 , --- N.C. App. at ----,
 
 823 S.E.2d at 662-63
 
 . In deciding what weight, if any, we must give the Tribal Court's
 
 Order of Jurisdiction
 
 , we are persuaded by our caselaw regarding foreign judgments. "[A] foreign state's judgment is entitled to only the same validity and effect in a sister state as it had in the rendering state[.]"
 
 Bell Atl. Tricon Leasing Corp. v. Johnnie's Garbage Serv., Inc.
 
 ,
 
 113 N.C. App. 476
 
 , 478,
 
 439 S.E.2d 221
 
 , 223,
 
 disc. review denied
 
 ,
 
 336 N.C. 314
 
 ,
 
 445 S.E.2d 392
 
 (1994). "The [Uniform Enforcement of Foreign Judgments Act ('UEFJA') ] 'governs the enforcement of foreign judgments that are entitled to full faith and credit in North Carolina.' "
 
 Tropic Leisure Corp.
 
 ,
 
 251 N.C. App. at 917
 
 ,
 
 796 S.E.2d at
 
 131 (citing
 
 Lumbermans Fin., LLC v. Poccia
 
 ,
 
 228 N.C.App. 67
 
 , 70,
 
 743 S.E.2d 677
 
 , 679 (2013) ).
 

 Under the UEFJA, to domesticate a foreign judgment the party seeking to enforce the judgment "must file a properly authenticated foreign judgment with the office of the [C]lerk of [S]uperior [C]ourt in any North Carolina county along with an affidavit attesting to the fact that the foreign judgment is both final and unsatisfied in whole or in part and setting forth the amount remaining to be paid on the judgment."
 

 Id.
 

 ;
 
 see
 

 *295
 
 N.C.G.S. § 1C-1703(a) (2017). Here, no such filing was made with any North Carolina court-including ours-and the only copy of the Tribal Court's purported Order we have is the unauthenticated copy included in the Record as part of the "Proposed Intervenor's Exhibits for June 15, 2016 District Court hearing[.]"
 

 As in
 
 Tropic Leisure Corp.
 
 , we are concerned about the Due Process implications of giving full faith and credit to the Tribal Court's Order. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."
 
 Mathews v. Eldridge
 
 ,
 
 424 U.S. 319
 
 , 333,
 
 96 S.Ct. 893
 
 , 902,
 
 47 L. Ed. 2d 18
 
 , 32 (1976) (internal citation and quotation marks omitted). There is nothing in the record indicating Appellees were given notice of the Tribal Court proceedings or an opportunity to be heard in the Tribal Court. Indeed, Appellees made this argument at the 16 June 2016 hearing, and the Order was not admitted as a result. Additionally, the interests of K.L.J. and K.P.J. were not represented in the Tribal Court by a Guardian Ad Litem, and the juveniles were not afforded Due Process at the alleged 14 June 2016 hearing in the Tribal Court.
 

 We hold the District Court did not err in its treatment of the Tribal Court's purported 14 June 2016
 
 Order of Jurisdiction
 
 , which was not presented as a properly authenticated
 
 *119
 
 document. To the extent a hearing was conducted in the Tribal Court, we hold it did not comply with the basic tenants of our Due Process jurisprudence because no party besides Appellant was given notice of the proceeding or an opportunity to be heard. In addition to the parties, K.L.J. and K.P.J. were not afforded Due Process at the alleged 14 June 2016 Tribal Court hearing. Due Process will not allow the best interests of the children to be silenced.
 

 CONCLUSION
 

 The District Court did not err in asserting jurisdiction over the adoption of K.L.J. and K.P.J. because the relevant section of ICWA and associated regulations did not confer exclusive jurisdiction upon the Tribal Court. Additionally, the District Court did not err in failing to give full faith and credit to an unauthenticated order purportedly entered by the Tribal Court two days prior to the hearing at issue without providing Due Process to the Appellees or the unrepresented children.
 

 AFFIRMED.
 

 Chief Judge McGEE concurs.
 

 Judge ARROWOOD concurs in the result without separate opinion.
 

 [1]
 

 In contrast, effective 12 December 2016, "The Indian Tribe of which it is believed the child is a member ... determines whether the child is a member of the Tribe[,]" and "[that] determination ... is solely within the jurisdiction and authority of the Tribe, except as otherwise provided by Federal or Tribal law."
 
 25 C.F.R. § 23.108
 
 (a)-(b) (2016).